## Alexandria

EUGENE THOMAS BULATKO

v.

COMMONWEALTH OF VIRGINIA

No. 0789-91-4

Decided March 23, 1993

136

COUNSEL

Jay K. Wilk, Assistant Public Defender, for appellant.

H. Elizabeth Shaffer, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**BARROW, J.**—This appeal is from a conviction of driving a motor vehicle after having been adjudicated an habitual offender in violation of Code § 46.2-357. We hold that an anonymous report received by a police officer was sufficiently corroborated to constitute articulable suspicion justifying his investigative stop of the automobile driven by the defendant.

On the day the defendant was arrested, an anonymous person telephoned Chief Hassler of the Mount Jackson Police Department and told him that the defendant, whom he identified by name, was driving toward Mount Jackson and did not have a driver's license. The informant said that the defendant was driving a Dodge automobile and told Hassler the color and license plate number of the vehicle. Chief Hassler confirmed through a check of records that the defendant was an habitual offender and that the automobile bearing the reported license plate number did not belong to the defendant.

Later that same evening, Chief Hassler spotted the Dodge automobile with the color and license plate number provided him by the informant driving on Main Street in Mount Jackson. Hassler stopped the automobile and recognized that the defendant, whom he knew, was driving the vehicle.

■ A police officer may stop a motor vehicle, without probable cause, for investigatory purposes if he or she possesses a reasonable and articulable suspicion "that a motorist is [unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise] subject to seizure for violation of law." *Waugh v.*

*Commonwealth*, 12 Va. App. 620, 621-22, 405 S.E.2d 429, 429 (1991) (quoting *Delaware v. Prouse*, 440 U.S. 648, 663 (1979)). Although the Commonwealth has the burden of proving that such an investigatory stop is lawful, *Murphy v. Commonwealth*, 9 Va. App. 139, 143, 384 S.E.2d 125, 127 (1989), the "level of suspicion required [for an investigative stop] is less demanding than the standard of probable cause." *Quigley v. Commonwealth*, 14 Va. App. 28, 33, 414 S.E.2d 851, 854 (1992).

▇ Furthermore, anonymous information that has been sufficiently corroborated may furnish reasonable suspicion justifying an investigative stop. *Alabama v. White*, 496 U.S. 325, 331 (1990). Every detail mentioned by an anonymous informer need not be verified to establish reasonable suspicion. *Id.* Significant aspects of the informer's information must be independently corroborated, however, to give "some degree of reliability to the other allegation" of the informant. *Id.* at 332.

In this case, every fact related by the informant, except the identity of the driver of the car, was independently corroborated. The make, color, and license plate number of the automobile and the fact that the defendant had been declared an habitual offender were independently corroborated by Chief Hassler before he stopped the vehicle. Chief Hassler had sufficient information to know that, if the defendant was operating a motor vehicle, he was committing a felony. The anonymous information provided Chief Hassler a reason to suspect that the defendant was operating the identified vehicle. We hold, therefore, that reasonable and articulable suspicion of criminal activity justified the stop of the automobile driven by this defendant and his right to remain free from unreasonable search and seizure was not violated.

This case differs from *Beckner v. Commonwealth*, a recent decision of this court. In that case, the informant did not give the officer the name of the driver, the license number of the automobile, or its color. *Beckner v. Commonwealth*, 15 Va. App. 533, 534, 425 S.E.2d 530, 531 (1993). Furthermore, unlike *Beckner*, in this case, the police officer corroborated the informant's allegation that the defendant did not have a driver's license. In *Beckner*, on the other hand, the officer, not knowing the basis for the informant's allegation, had no independent corroboration of the crime. Furthermore, the officer in that case was unable to determine before he stopped the car that the person, who the informant said was driving, was not licensed. *Id.* The officer in

*Beckner* was able to corroborate significantly less of the informant's information than the officer in this case.

The judgment of conviction is affirmed.

*Affirmed.*

Coleman, J., concurred.

Benton, J., dissenting.

In "a close case," *Alabama v. White*, 496 U.S. 325 (1990), the Supreme Court concluded that:

> [T]he independent corroboration by the police of *significant aspects of the informer's predictions* imparted some degree of reliability to the other allegations made by the caller.
>
> [It is] also important that, as in [*Illinois v. Gates*, 462 U.S. 213 (1983)], "the anonymous [tip] contained a range of details relating not just to easily obtained facts and conditions existing at the time of the tip, but to *future actions* of third parties ordinarily not easily predicted." *Id.*, at 245.

*Id.* at 332 (emphasis added).

The information that the Sheriff received in this case cannot be described as containing a range of details indicating the informant had knowledge of the type that might be deemed reliable. The Sheriff testified:

> The information that the caller gave me was that Mr. Bulatko was operating a vehicle heading towards Mount Jackson, and that he did not have a driver's license. . . .
>
> The caller also advised that he was driving a specific type of car, which was a Dodge, and a specific color, with the exact tag information that he gave me.

The information does not predict future conduct. The informant merely made a statement of a then-present existing condition. Moreover, the substance of the anonymous informant's information demonstrated no special knowledge that imparted a degree of reliability to the informant. "Anyone could have "predicted' [those] fact[s] because [they were] a condition presumably existing at the time of the

call.'' *Id.* at 332. In contrast to *White* and *Gates*, the informant in this case merely related ''easily obtained facts and conditions existing at the time of the tip.'' *Gates*, 462 U.S. at 245.

When the Sheriff stopped the automobile in the Town of Mount Jackson forty-five minutes after receiving the telephone call from the anonymous informant, he had determined that Bulatko was an habitual offender. He had also verified that the color and model of the automobile conformed to the numbers registered on the automobile plates. However, verification of these facts has no bearing upon the informant's veracity and basis of knowledge. These verifications did not corroborate any detail that was significantly related to the happening of a criminal offense. *See Hardy v. Commonwealth*, 11 Va. App. 433, 436, 399 S.E.2d 27, 29 (1990). They are no more significant than, for example, verifying a statement by the informant that the sky was dark at 5:45 p.m. on January 11 when the telephone call was received by the Sheriff.

What is significant about the reported statements is the lack of detail and prediction of future conduct that would evince reliability once the assertions were verified. None of the information in the statements ''contained a range of details relating not just to easily obtained facts and conditions existing at the time of the tip, but to *future actions of third parties ordinarily not easily* predicted.'' *Gates*, 462 U.S. at 245 (emphasis added). The informant did not state, for example, whether the automobile was then forty miles or one block away from the Town of Mount Jackson. Moreover, the Sheriff did not verify that the automobile had been outside the town and was driven into the town. Forty-five minutes after receiving the tip, the Sheriff saw the described automobile in Mount Jackson.

The record contains no proof concerning whether the automobile was registered to someone who lived in Mount Jackson. The evidence only proved that the automobile was registered to someone other than Bulatko. Thus, the record fails to prove that the automobile was not usually located in Mount Jackson. Because the Sheriff failed to verify that forty-five minutes prior to the stop the automobile was heading toward the Town of Mount Jackson, the absence of evidence in the record concerning the place of registration of the automobile negates any basis upon which this Court could conclude that the Sheriff had an articulable reason to know that the automobile may have come from a place out of the Town.

Verification of Bulatko's driving status and the identity of the automobile did not provide sufficient corroboration to establish reasonable suspicion that Bulatko was the driver of the automobile that was not registered to him. When the Sheriff stopped the described automobile, he did not see the driver and was unable to determine if Bulatko was one of the three persons in the automobile. Thus, the Sheriff did not have "independent corroboration . . . of *significant aspects*" of the informant's tip. *White*, 496 U.S. at 332 (emphasis added). The verifications were of facts that were so independent of each other and so tangential to the identity of the driver of the automobile as to be unrelated to a reasonable belief that Bulatko was in fact the driver of the vehicle forty-five minutes after the tip was received. "Thus, the officer could not have subsequently developed a well founded suspicion through his own independent investigation." *Campbell v. State of Washington Dep't of Licensing*, 31 Wash. App. 833, 836, 644 P.2d 1219, 1221 (1982). The automobile was stopped solely because it bore the number on its license plate reported by the informant. "Manifestly, this conduct falls below activity necessary to justify a reasonable suspicion that a violation of law had occurred or was occurring." *Zimmerman v. Commonwealth*, 234 Va. 609, 612, 363 S.E.2d 708, 710 (1988).

I dissent.