**Salem**

RALEIGH DEON MOTLEY

v.

COMMONWEALTH OF VIRGINIA

No. 0966-92-3

Decided November 23, 1993

COUNSEL

Maureen L. White, Assistant Public Defender (Lynchburg Public Defender's Office, on briefs), for appellant.

Leah A. Darron, Assistant Attorney General (Stephen D. Rosenthal, Attorney General, on brief), for appellee.

OPINION

**FITZPATRICK, J.**—Raleigh Deon Motley (appellant) was convicted in a bench trial of possession of cocaine in violation of Code § 18.2-250. On appeal, he contends that the trial court erred in failing to suppress the cocaine he discarded, because it was obtained as the result of an illegal seizure. We agree and reverse the conviction.

On January 21, 1992, Officer J.T. Lloyd of the City of Lynchburg Police Department was on duty and a passenger in a marked police cruiser. At approximately 9:00 p.m., the police radio dispatcher advised Lloyd to be on the lookout for "[a] black male with a yellow hat and black Kings coat." There is no explanation in the record as to why this individual was sought by the police. Four or five minutes after Lloyd received this information, he saw appellant, who fit the description, walking along a street toward his police cruiser. The cruiser moved slowly toward appellant and stopped approximately ten feet from him. Lloyd then "bail[ed] out of the car" and yelled at appellant to "stop." Appellant halted and, "about the same time," dropped an object on the ground, which was later determined to be cocaine.

Prior to trial, appellant moved to suppress the cocaine seized by Lloyd, because the officer had no reasonable suspicion to make the initial stop. The Commonwealth failed to provide any explanation of the basis of the police broadcast or in what criminal activity the described individual was allegedly engaged. In denying the motion to suppress, the trial judge stated:

> I think it's an extremely close case. In this instance, I'm going to find that the officer had no probable cause to arrest and he had no reasonable and articulable suspicion as he stopped the car, but as he approached the individual and told him to stop, he got out of his car and told him to stop, and simultaneously he dropped the white object that appeared to be cocaine to the officer, he had at that point authority to seize him and that's what happened. I'm going to overrule your motion.

It is well established that, on appeal, appellant carries the burden to show, considering the evidence in the light most favorable to the Commonwealth, that the denial of a motion to suppress constitutes

reversible error. *Fore v. Commonwealth,* 220 Va. 1007, 1010, 265 S.E.2d 729, 731, *cert. denied,* 449 U.S. 1017 (1980). The mere broadcast by the police to be on the lookout for an individual, without more, does not provide a patrol officer receiving such broadcast articulable and reasonable suspicion that criminal activity is afoot. *See Waugh v. Commonwealth,* 12 Va. App. 620, 621-22, 405 S.E.2d 429, 429 (1991); *Bulatko v. Commonwealth,* 16 Va. App. 135, 137, 428 S.E.2d 306, 307 (1993). Therefore, because there was no evidence presented at the suppression hearing explaining the reason for the police broadcast, the source or reliability of the information received, or any corroboration by the arresting officer, we conclude that the trial court properly found that the officer had no basis to conduct a *Terry* stop.[1]

The determinative issue presented by this case is whether the "bail out" from the police cruiser approximately ten feet from appellant and the simultaneous command by Officer Lloyd to "stop" constituted a "seizure" within the meaning of the Fourth Amendment to the United States Constitution. The evidence shows that the officer intended to curtail the possibility of appellant's flight. In response to the question by the court: "Why did you say stop?" Officer Lloyd replied: "a lot of times people take off running; it was just in sting [sic]."

[A] person is "seized" only when, by means of physical force *or a show of authority,* his freedom of movement is restrained. Only when such restraint is imposed is there any foundation whatever for invoking constitutional safeguards. The purpose of the Fourth Amendment is not to eliminate all contact between the police and the citizenry, but "to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals." As long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some particularized and objective justification.

. . . .

We conclude that a person has been "seized" within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would

---

[1] *See Terry v. Ohio,* 392 U.S. 1 (1968).

have believed that he was not free to leave. Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, *or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.*

*United States v. Mendenhall,* 446 U.S. 544, 553-54 (1980) (emphasis added) (footnote and citations omitted).

■ Generally, where an individual has submitted to a police officer's command, the test to determine whether a seizure has occurred is whether "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Michigan v. Chesternut,* 486 U.S. 567, 573 (1988) (citations omitted). The Commonwealth erroneously relies on *California v. Hodari D.,* 499 U.S. 621 (1991) and *Baldwin v. Commonwealth,* 243 Va. 191, 413 S.E.2d 645 (1992), for the proposition that Officer Lloyd's conduct and command to appellant to "stop" did not constitute a "seizure." These cases, however, are distinguishable from the case at bar.

In *Hodari D.,* a police officer attempted to stop and question the defendant without reasonable suspicion. The defendant reacted to the police encounter by fleeing and, during his flight, he discarded evidence. This evidence was admissible because the defendant abandoned the evidence prior to being seized by the police. The United States Supreme Court held that because the defendant did not submit to the officer's "show of authority" he was not seized within the meaning of the Fourth Amendment. "Thus, the issue in *Hodari D.* was not what a reasonable person would have assumed under the circumstances, but what the accused actually did in response to the police officer's show of authority." *Woodson v. Commonwealth,* 245 Va. 401, 405, 429 S.E.2d 27, 29 (1993). In the case at bar, the evidence shows that appellant complied with the officer's command and made no attempt to flee. Accordingly, the *Hodari D.* analysis is inapplicable.

In *Baldwin,* a police officer responded to a radio call regarding a possible drunk in public. The officer pulled into a parking lot and stopped his police cruiser fifteen feet from the defendant. The officer then " 'got out of [the] car and went to them.' He acknowledged that 'maybe [he] did call towards - call for them' as they were 'walking

back towards apartments.'" *Baldwin,* 243 Va. at 193-94, 413 S.E.2d at 646. In concluding that the initial encounter did not constitute a seizure, the Supreme Court of Virginia, relying on the standard set forth in *Mendenhall,* found "no evidence of . . . 'the use of language or tone of voice indicating that compliance with the officer's request might be compelled.'" *Id.* at 199, 413 S.E.2d at 649 (quoting *Mendenhall,* 466 U.S. at 554). In the case at bar, the officer's conduct and command was intended to prevent appellant from leaving. *Cf. Chesternut,* 486 U.S. at 576 n.7 ("goal of 'chase' was not to capture respondent"). Officer Lloyd described the purpose of his conduct as follows:

> The whole idea is to act as normal as you can so don't anybody think anything and at the last minute, you bail out of the car.
>
> . . .
>
> For the fact a lot of times people take off running; it was just in sting [sic].

From the evidence before us, we find that when the officer "bail[ed] out" of his police cruiser approximately ten feet from appellant and yelled at him to "stop," and appellant complied with the officer's command, a seizure occurred. There is no dispute that, at the moment the officer left his vehicle, he had neither probable cause to arrest appellant nor reasonable suspicion to justify an investigatory stop. Accordingly, the seizure effected by the officer's conduct and command violated appellant's Fourth Amendment rights and the evidence discarded "around the same time" or "simultaneously" with the unlawful seizure is inadmissible.

For the reasons set forth above, the judgment of the trial court is reversed and the matter is remanded for further proceedings consistent with this opinion, if the Commonwealth be so advised.

*Reversed and remanded.*

Koontz, J., and Elder, J., concurred.