COURT OF APPEALS OF VIRGINIA


Present:  Judges Coleman, Elder and Senior Judge Cole
Argued at Richmond, Virginia


PHARONDUS MOLIX CLEMON

v.        Record No. 0035-94-2      MEMORANDUM OPINION[*]
                                 BY JUDGE SAM W. COLEMAN III
COMMONWEALTH OF VIRGINIA              MAY 2, 1995


          FROM THE CIRCUIT COURT OF LANCASTER COUNTY
                Joseph E. Spruill, Jr., Judge

          Francis A. Burke (Burke & Kilduff, on brief),
          for appellant.

          Robert B. Beasley, Jr., Assistant Attorney General
          (James S. Gilmore, III, Attorney General, on brief),
     for appellee.


     Pharondus Molix Clemon was convicted in a bench trial of

possessing cocaine with the intent to distribute.  Clemon

contends that the trial court erred by denying his motion to

suppress the seized cocaine because the police officers did not

have the requisite suspicion to stop and frisk him.  For the

following reasons, we affirm the trial court's decision.

     Officer Martin Shirilla, a dispatcher with the Lancaster

County Sheriff's Office, received a telephone call around noon on

the crime stoppers' hotline.  The caller stated that he

personally knew that five black males in a small red car, bearing

Virginia license plate OIG-163, were in the Weems area and were

in possession of cocaine.  The caller explained that he was

---

[*] Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

familiar with cocaine, he described the amount of cocaine the individuals possessed, and he reported that the cocaine was located inside the suspects' pants. He also told the dispatcher that the car in which the suspects were riding was registered to a person in West Point and that the suspects would be returning to West Point by 3:30 that afternoon. Lastly, the caller reported that he had previously worked with an Investigator Allen, to whom he had provided information that had resulted in several drug convictions.

Officer Shirilla dispatched the information to Officer Joan Webb. Shirilla told Webb that he thought he had recognized the caller's voice and he identified to Webb whom he thought the caller to have been. Officer Webb responded that she knew that person to be a reliable informant.

Officer Webb contacted two additional officers who were members of a drug interdiction task force. At 2:01 p.m., the three officers observed a small red car, occupied by five black males, bearing Virginia license plate DIJ-163. The officers followed the car. It travelled at a slow rate of speed, the occupants appeared "nervous," and they continually turned around and watched the police officers who were following them. Officer Webb recognized one of the passengers to be Wilbert Corsey, a person whom she knew to have been involved in drug activities.

Based upon the caller's tip and after observing the foregoing events, the officers stopped the vehicle. Officer Webb

frisked the occupants for weapons as they exited the vehicle. Because Officer Webb is a female, she did not, however, thoroughly pat down the male suspects. Upon exiting the vehicle, some of the suspects asked to use the bathroom. Deputy Carmel, a male, escorted the suspects to the nearby woods for that purpose. Deputy Carmel testified that because of his concern for his own safety and because Officer Webb told him that she only cursorily frisked the appellant for weapons, he decided to frisk the appellant a second time. When the appellant raised his arms, Officer Carmel observed a plastic "baggie" protruding from the appellant's waistband. Deputy Carmel removed the "baggie," which contained thirty-three packets of cocaine rocks. The trial court overruled the appellant's motion to suppress the cocaine as having been illegally seized.

When reviewing the denial of a motion to suppress evidence, we view the evidence in the light most favorable to the Commonwealth, and the appellant has the burden of showing that the judge's ruling is plainly wrong or without evidence to support it. Lee v. Commonwealth, 18 Va. App. 235, 238, 443 S.E.2d 180, 181 (1994).

In order for a police officer to lawfully stop the occupants of an automobile, the officer must have a reasonable articulable suspicion that a crime has been or is about to be committed. Quigley v. Commonwealth, 14 Va. App. 28, 32, 414 S.E.2d 851, 853-54 (1992). The level of suspicion required to make an

-3-

investigatory stop is less demanding than is required to search or to arrest a person.  Bulatko v. Commonwealth, 16 Va. App. 135, 136–37, 428 S.E.2d 306, 307 (1993).  However, in order to make an investigatory stop, a police officer must point to specific objective facts that reasonably support a suspicion that criminal activity may be afoot.  Delaware v. Prouse, 440 U.S. 648, 663 (1975).

While an anonymous telephone tip may be insufficient to justify an investigatory stop, see Beckner v. Commonwealth, 15 Va. App. 533, 425 S.E.530 (1993), anonymous information that has been sufficiently corroborated may provide the reasonable suspicion necessary to stop persons and inquire whether a crime may be in progress.  See Bulatko, 16 Va. App. at 137, 428 S.E.2d at 307; see also Boyd v. Commonwealth, 12 Va. App. 179, 189–90, 402 S.E.2d 914, 921 (1991).  The rationale for demanding corroboration of information provided from an anonymous informant is the need to have an objective basis for assessing the reliability of the information.  See Beckner, 15 Va. App. at 535–36, 425 S.E.2d at 532; and Bulatko, 16 Va. App. at 137, 428 S.E.2d at 307; see also Alabama v. White, 496 U.S. 325 (1990). Every detail provided by an anonymous informant may not have to be corroborated, provided significant aspects of the information are independently corroborated.  Bulatko, 16 Va. App. at 137, 428 S.E.2d at 307.

Officer Webb corroborated several significant aspects of the

informant's call.  The officers observed a small red car occupied by five black males, which corresponded to the informant's description of the vehicle and its occupants.  The car had Virginia license plate DIJ-163.  Although the number did not correspond to the number "OIG-163" provided by the dispatcher, the identity of the last three digits, and the similarity in the letters, when considered with the identity of the description of the car and its occupants, was sufficient to give the officers reasonable assurance that there had been a miscommunication in the license number and that the vehicle and its occupants were the same that the informant reported as possessing cocaine.  The car was in Weems, in close proximity to where the informant reported its location.  Although the car was not travelling in the direction of West Point, which was its reported destination, it was at a location that would have enabled it to return to West Point by 3:30 p.m.  The passengers kept looking at and watching the officers following the car.  The car travelled at a slow rate of speed.  Officer Webb recognized one of the occupants as being a person she knew to have been previously involved in drug activity.

The situation in the present case differs somewhat from the situation in Bulatko which involved an anonymous informant. Here, Officer Shirilla testified that he thought he recognized the informant by his voice on the telephone.  The person whom he thought to be the informant had provided details of past drug

-5-

transactions that had assisted the police. Officer Webb knew the person whom Officer Shirilla thought to be the informant as a person who had provided reliable information. Because the investigating officer had information that persons in a particular vehicle were in possession of cocaine, and because the information was thought to have been from a person known to have previously provided reliable information about drug transactions, the officers had a reasonable suspicion that the occupants of the car possessed cocaine. Moreover, the officers corroborated significant aspects of the informant's tip, they observed furtive conduct by the suspects, and one officer knew of one occupant's prior involvement in drug activity. On these facts, the trial judge did not err in finding that the officers had articulated substantial valid reasons to suspect that the occupants of the red car possessed cocaine, thereby justifying the officers in making an investigatory stop of the vehicle and questioning of its occupants. Accordingly, we affirm the trial court's ruling denying the appellant's motion to suppress the seized cocaine based on an unlawful stop.

The appellant next contends that a second weapons frisk by Deputy Carmel, which disclosed the cocaine, exceeded the scope of a constitutional stop and frisk.

The Fourth Amendment prohibits unreasonable searches and seizures. Terry v. Ohio, 392 U.S. 1, 9 (1968). Two types of seizures trigger Fourth Amendment protections—investigatory stops

and arrests.  Baldwin v. Commonwealth, 243 Va. 191, 195, 413 S.E.2d 645, 647 (1992).  When conducting an investigatory stop, an officer may take steps that are reasonably necessary to protect his or her safety.  See U.S. v. Hensley, 469 U.S. 221, 235 (1985).

When the suspects exited the vehicle, Officer Webb conducted a cursory pat-down search of the suspects for weapons.  She found none. Some of the suspects then asked to use the restroom. Because Officer Webb was female and the suspects were male, the request required the officers to separate.  The risk of harm to each officer increased when they separated.  Deputy Carmel testified that the purpose of his frisking the suspects a second time was to protect his safety while he was escorting the suspects into the woods.  Deputy Carmel was reasonably justified in making a second and more thorough pat down of the appellant for weapons in order to assure and to protect the officer's safety.  We, therefore, affirm the decisions of the trial court.

Affirmed.