COURT OF APPEALS OF VIRGINIA

Present:  Judges Benton, Coleman and Senior Judge Cole
Argued at Richmond, Virginia


SEAN A. JERRELLS
                                      MEMORANDUM OPINION*
v.   Record No. 0559-97-2             BY JUDGE MARVIN F. COLE
                                          APRIL 21, 1998
COMMONWEALTH OF VIRGINIA

              FROM THE CIRCUIT COURT OF HALIFAX COUNTY
                   Charles L. McCormick, III, Judge

         Buddy A. Ward, Public Defender, for
         appellant.

         Steven A. Witmer, Assistant Attorney General
         (Richard Cullen, Attorney General, on brief),
         for appellee.


     Appellant, Sean A. Jerrells, appeals his conviction in a

bench trial of possessing cocaine with the intent to distribute.

He contends that the trial court erred in denying his motion to

suppress the evidence obtained in an illegal stop of his car

which violated his Fourth Amendment rights.  We agree and

reverse.

     When viewed in the light most favorable to the Commonwealth,

the prevailing party below, the evidence proved that on October

13, 1995, Lieutenant R.J. Loftis, of the South Boston Police

Department, received a radio dispatch which reported that a

delivery driver had witnessed a drug transaction on the church

lot next to the brick house on Park Avenue at the intersection of

_____
     *Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

Hamilton Boulevard. The unnamed delivery driver had described a white Ford Tempo, with license plate number RSF-211. She said that two black males occupied the car. No further information was given.

Lt. Loftis was familiar with the car described by the informant. He knew that it was a rented vehicle from the license plate number. Loftis had regularly, and including that day, seen the car in the area of Park and Hamilton, an area known to him to be an open air crack cocaine market. Loftis had made arrests leading to convictions at that location within the previous year.

Loftis drove to the location but did not find the car there. He continued to drive around in the area. When he got to the intersection of West and Washington, he met the Ford Tempo, which was stopping at the intersection. Loftis pulled in front of the Tempo and stopped it. Three black males occupied the car; appellant was the driver. As Loftis approached the Tempo, he smelled marijuana and could see cigar tobacco on the floorboards. According to Loftis, it was a common practice for marijuana smokers to hollow out cigars and replace the tobacco with marijuana.

Loftis asked appellant for his driver's license, which he could not produce. Loftis checked on the status of appellant's license and found that it had been suspended. Loftis then had appellant exit the car and patted him down for weapons. He felt a small square box in his right pocket. Loftis reached into the

2

pocket and retrieved a tic-tac candy dispenser, which he described as a "container of choice" for crack cocaine in the locality.  Appellant admitted that the container was his, it contained crack cocaine, and he "may" have sold some cocaine earlier.  Accordingly, appellant was "cuffed and placed under arrest."

In reviewing a trial court's denial of a motion to suppress, "[t]he burden is upon [the defendant] to show that th[e] ruling, when the evidence is considered most favorably to the Commonwealth, constituted reversible error."  Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731, cert. denied, 449 U.S. 1017 (1980).  "[U]ltimate questions of reasonable suspicion and probable cause to make a warrantless" stop or seizure involve questions of both law and fact and are reviewed de novo on appeal.  Ornelas v. United States, 116 S. Ct. 1657, 1659 (1996).  In performing such analysis, we are bound by the trial court's findings of historical fact unless plainly wrong, and we "give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." Id. at 1663.[1]  "We analyze a trial judge's determination whether

_____

[1] Ornelas held that findings of historical fact are reviewed on appeal only for "clear error."  However, "'[c]lear error' is a term of art derived from Rule 52(a) of the Federal Rules of Civil Procedure, and applies when reviewing questions of fact" in the federal system.  Ornelas, 116 S. Ct. at 1661 n.3.  In Virginia, questions of fact are binding on appeal unless "plainly wrong." Quantum Dev. Co. v. Luckett, 242 Va. 159, 161, 409 S.E.2d 121, 122 (1991); Naulty v. Commonwealth, 2 Va. App. 523, 527, 346 S.E.2d 540, 541 (1986).

the Fourth Amendment was implicated by applying <u>de</u> <u>novo</u> our own legal analysis of whether based on those facts a seizure occurred." <u>McGee v. Commonwealth</u>, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (<u>en</u> <u>banc</u>) (citations omitted).

In <u>Murphy v. Commonwealth</u>, 9 Va. App. 139, 384 S.E.2d 125 (1989), we reviewed the law that permits a police officer to stop a motor vehicle based upon a reasonable suspicion of an unlawful activity:

> When the police stop a vehicle and detain its occupants, the action constitutes a "seizure" of the person for fourth amendment purposes. If the stop of the vehicle is without a warrant, the Commonwealth has the burden to prove the stop was legal. Any warrantless stop of a vehicle which leads to an arrest of its occupants requires probable cause to believe that a crime has been committed. However, if an officer has an "articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of the law," the officer may conduct an investigatory stop of the vehicle limited in time and scope to ascertaining whether the suspicions are accurate.

<u>Id.</u> at 143, 384 S.E.2d at 127 (citations omitted). <u>See also</u> <u>Bulatko v. Commonwealth</u>, 16 Va. App. 135, 136-37, 428 S.E.2d 306, 307 (1993).

A seizure for Fourth Amendment purposes occurs when "circumstances . . . amount to a show of official authority such that 'a reasonable person would have believed that he was not free to leave.'" <u>Florida v. Royer</u>, 460 U.S. 491, 502 (1983) (citation omitted). "[W]henever a police officer accosts an

4

individual and restrains his freedom to walk away, he has 'seized' that person." Terry v. Ohio, 392 U.S. 1, 16 (1967).

We conclude, as the Attorney General conceded in oral argument, that the manner in which Loftis pulled his police vehicle in front of appellant, stopping him at the intersection, constituted a "seizure" for Fourth Amendment purposes. No reasonable person would feel that he was free to leave if stopped in such a manner by a police car.

If Lt. Loftis had reasonable, articulable suspicion that appellant was engaged in, or was about to engage in, criminal activity, he had a right to detain appellant to conduct a brief investigation without violating his Fourth Amendment protection against unreasonable searches and seizures. The justification for stopping appellant need not rise to the level of probable cause, but must be more than an "inchoate and unparticularized suspicion or 'hunch.'" Terry, 392 U.S. at 27.

Anonymous information may furnish reasonable suspicion justifying an investigative stop, provided it has been sufficiently corroborated by other evidence. See Alabama v. White, 496 U.S. 325, 331 (1990). See also Bulatko, 16 Va. App. at 137, 428 S.E.2d at 307. Every detail reported by an anonymous informant need not be corroborated to establish reasonable suspicion. See id. Significant aspects of the informer's information must be independently verified, however, to give "some degree of reliability to the other allegation" of the

informant.  White, 496 U.S. at 332.

In this case, the Commonwealth alleges that the stop was justified by reasonable suspicion of criminal activity and that the information given by the unidentified truck driver was sufficiently corroborated to give it reliability.  It enumerates the following to corroborate the informer's information:  (1) the driver reported actually seeing a drug deal at a specific location; (2) the informant gave a detailed description of a vehicle which included the make and license plate number, details which were later verified by police observation; (3) Loftis was familiar with the area and recognized the car as a rental car that was kept at the described location, and he had seen the car in the area many times; and (4) Loftis knew the area to be an open air crack market.  Therefore, the Commonwealth argues, Lt. Loftis had reasonable suspicion that the occupants of the vehicle were engaged in unlawful activity and he properly stopped the vehicle to briefly investigate.

The appellant contends that Loftis seized him on the basis of an anonymous, unsubstantiated statement by someone who believed she had seen a drug transaction.  He argues that the police made no inquiry as to how she reached that conclusion, what she saw, or what training she had that would support a reasonable belief that appellant was committing a crime.  Her report made no predictions, but provided only information that could be reported by anyone, regardless of whether he or she had

6

seen a drug transaction. Therefore, appellant contends that there was no evidence to give any credibility to the informant's report. Appellant maintains that his motion for suppression should have been granted and all the evidence secured as a result of the illegal stop should have been suppressed. We agree.

We shall respond to the Commonwealth's corroboration evidence in the order enumerated. The informant reported that she had observed a drug transaction at Park Avenue and Hamilton Boulevard. The dispatch related the description of a white Ford Tempo that was occupied by two men. When Loftis went to this location to verify the tip, he did not find the Tempo. The truck driver reported seeing a drug transaction, but there is no evidence in the record to support such an accusation except the tip itself. Moreover, the record contains no testimony that recites the activity observed or that describes the conduct of the car's occupants as being involved in the suspected drug transaction.

Loftis testified that he was familiar with the area and recognized the car as a rental car, from its license number. He had seen the car in the area many times before. Lt. Loftis did not explain how this information would lead to a reason to suspect that the occupants were engaged in criminal activity. He indicated only that a rental car was kept in the area "most of the time." We fail to see any connection between this testimony and the informant's tip.

Loftis testified that he knew the area at Park and Hamilton Boulevard to be an open air crack market. Not every operator of an automobile in the vicinity of where drugs are known to be sold can reasonably be suspected of trafficking in drugs. Moreover, the Tempo was not found at that location, but at West and Washington Avenue, some distance away. The evidence does not disclose that area to be an open air crack market. No corroborating evidence places the Tempo at any location except where the officers stopped it. The informant reported two occupants in the Tempo. When located by Loftis, it contained three occupants.

Based upon a totality of the evidence, we find that the evidence is insufficient to properly corroborate the informant's information and the stop was illegal. Therefore, the motion to suppress the evidence should have been granted because the seizure was unlawful. All of the evidence obtained after the seizure should have been suppressed as "fruit of the poisonous tree." Commonwealth v. Ealy, 12 Va. App. 744, 754, 407 S.E.2d 681, 687 (1991).

Accordingly, we reverse the conviction and dismiss the charge.

Reversed and dismissed.