COURT OF APPEALS OF VIRGINIA

Present:    Judges Petty, O'Brien and AtLee
Argued by teleconference

UNPUBLISHED

COMMONWEALTH OF VIRGINIA

                                        MEMORANDUM OPINION[*] BY
v.      Record No. 1832-15-2                JUDGE WILLIAM G. PETTY
                                            MARCH 22, 2016

SHARONDA MONIQUE GAITERS


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Fredrick B. Lowe, Judge Designate

Elizabeth C. Kiernan, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellant.

Dorian Dalton, Senior Assistant Public Defender, for appellee.


Pursuant to Code § 19.2-398, the Commonwealth appeals the trial court's ruling granting

Sharonda Monique Gaiters's motion to suppress.  Gaiters was indicted in the City of Richmond

on March 12, 2015 for unlawfully selling, giving, or distributing a Schedule I or II controlled

substance in violation of Code § 18.2-248.  She was also indicted on August 3, 2015 for

unlawfully possessing with the intent to manufacture, sell, give, or distribute oxycodone, a

Schedule I or II controlled substance in violation of Code § 18.2-248.  Gaiters made a pretrial

motion to suppress, which the trial court granted on October 22, 2015.

On appeal, the Commonwealth presents four assignments of error:

I.  Gaiters failed to establish that she had a reasonable expectation
of privacy in an empty SUV in a market's parking lot; the circuit
court erred in granting her motion to suppress.

II.  As the narcotics-detection dog's alert provided probable cause
to search the vehicle, the circuit court erred in granting Gaiters's
motion to suppress.

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

III. As no officer by means of physical force or show of authority restrained Gaiters in any way, the circuit court erred in finding that a seizure occurred and in granting the motion to suppress.

IV. Assuming that a seizure did occur, the circuit court erred in finding that Officer Neifeld lacked reasonable suspicion to believe Gaiters was distributing narcotics.

## I.

Because the parties are fully conversant with the record in this case and this memorandum opinion carries no precedential value, we recite only those facts and incidents of the proceedings as are necessary to the parties' understanding of the disposition of this appeal.

"On appeal of a ruling on a motion to suppress, we view the evidence in the light most favorable to the prevailing party, here [Gaiters], granting to the evidence all reasonable inferences deducible therefrom." Cherry v. Commonwealth, 44 Va. App. 347, 356, 605 S.E.2d 297, 301 (2004).

## II.

We address the fourth assignment of error first. The trial court granted the motion to suppress because it found that Gaiters was seized for Fourth Amendment purposes when the police officer informed her he was going to have a drug dog walk around her car. The Commonwealth contends that even "[a]ssuming that a seizure did occur, the circuit court erred in finding that Officer Neifeld lacked reasonable suspicion to believe Gaiters was distributing narcotics." We agree.

"'Ultimate questions of reasonable suspicion and probable cause to make a warrantless search' involve questions of both law and fact and are reviewed *de novo* on appeal." McGee v. Commonwealth, 25 Va. App. 193, 197-98, 487 S.E.2d 259, 261 (1997) (*en banc*) (quoting Ornelas v. United States, 517 U.S. 690, 691 (1996)). "In performing such analysis, we are bound

by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them." Id. at 198, 487 S.E.2d at 261.

For purposes of this appeal, we will assume without deciding that the trial court correctly ruled that Gaiters was seized when Officer Neifeld told her that he was going to have a drug dog sniff the car. The issue then becomes whether that seizure was constitutionally permissible.

"Under Terry v. Ohio, 392 U.S. 1 (1968), and its progeny, a police officer 'may constitutionally conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot.'" Beasley v. Commonwealth, 60 Va. App. 381, 395, 728 S.E.2d 499, 505 (2012) (quoting Bass v. Commonwealth, 259 Va. 470, 474-75, 525 S.E.2d 921, 923 (2000)).

"Reasonable suspicion is simply suspicion that is reasonable. It is not something more than suspicion. And it can hardly be called proof." Mason v. Commonwealth, 64 Va. App. 292, 300, 767 S.E.2d 726, 731 (2015). "A 'reasonable suspicion' requires only 'some minimal level of objective justification' for making such a stop." Branham v. Commonwealth, 283 Va. 273, 280, 720 S.E.2d 74, 78 (2012) (quoting I.N.S. v. Delgado, 466 U.S. 210, 217 (1984)). "Although a mere 'hunch' does not create reasonable suspicion, Terry, 392 U.S. at 27, the level of suspicion the standard requires is 'considerably less than proof of wrongdoing by a preponderance of the evidence,' and 'obviously less' than is necessary for probable cause, United States v. Sokolow, 490 U.S. 1, 7 (1989)." Navarette v. California, 134 S. Ct. 1683, 1687 (2014).

"Whether an officer has a reasonable suspicion to justify such a detention is 'based on an assessment of the totality of the circumstances.'" Branham, 283 Va. at 280, 720 S.E.2d at 78 (quoting Harris v. Commonwealth, 276 Va. 689, 695, 668 S.E.2d 141, 145 (2008)). "That assessment [also] 'allows officers to draw on their own experience and specialized training to

make inferences from and deductions about the cumulative information available to them.'" Id. (quoting United States v. Arvizu, 534 U.S. 266, 273 (2002)).

Reasonable suspicion can be "based on [an] officer's personal observations" or "on information supplied by another person." Navarette, 134 S. Ct. at 1688. Here, Officer Neifeld's reasonable suspicion was based on both.

a. The Concerned Citizen's Tip[1]

"[A]n anonymous tip *alone* seldom demonstrates the informant's basis of knowledge or veracity." Id. (quoting Alabama v. White, 496 U.S. 325, 329 (1990)). "To provide reasonable suspicion, either the informant or the information given must exhibit 'sufficient indicia of reliability.'" Giles v. Commonwealth, 32 Va. App. 519, 523, 529 S.E.2d 327, 329 (2000) (quoting White, 496 U.S. at 326-27). "In considering whether facts based on an anonymous tip are sufficient to provide a police officer a reason to suspect criminal activity, the United States Supreme Court has stated that 'anonymous [information that has] been sufficiently corroborated [may] furnish reasonable suspicion . . . [justifying an] investigative stop.'" Gregory v. Commonwealth, 22 Va. App. 100, 106, 468 S.E.2d 117, 120 (1996) (alterations in original) (quoting White, 496 U.S. at 331). "Applying Alabama v. White, we have held that although the police do not have to verify every detail provided by an anonymous tipster, 'significant aspects of the informer's information must be independently corroborated.'" Id. (quoting Bulatko v. Commonwealth, 16 Va. App. 135, 137, 428 S.E.2d 306, 307 (1993)).

"An accurate description of a subject's readily observable location and appearance is of course reliable in this limited sense: It will help the police correctly identify the person whom

---

[1] Officer Neifeld testified that he received a complaint from a concerned citizen about narcotics distribution. For the purposes of this analysis we will treat this citizen complaint as an anonymous tip, as the record does not indicate who the person was or how the complaint was communicated to Officer Neifeld.

the tipster means to accuse." Florida v. J.L., 529 U.S. 266, 272 (2000). Reasonable suspicion, however, additionally requires corroboration of the tip's "assertion of illegality, not just in its tendency to identify a determinate person." Id.; see also Navarette, 134 S. Ct. at 1688-92 (holding that a 911 call from an eyewitness reporting a specific act of reckless driving provided officers with reasonable suspicion to stop the reported truck because the call featured several indicia of reliability, including the specificity of the tip, the eyewitness' knowledge, the contemporaneous nature of the call, the use of the 911 call system, and the fact that tip turned out to be accurate).

Nonetheless, not all anonymous tipsters are demanding of the same degree of scrutiny when it comes to corroboration.

> Public-spirited citizens should be encouraged to furnish to the police information of crimes. Accordingly, we will not apply to citizen informers the same standard of reliability as is applicable when police act on tips from professional informers or those who seek immunity for themselves, whether such citizens are named, or as here, unnamed.

Guzewicz v. Commonwealth, 212 Va. 730, 735-36, 187 S.E.2d 144, 148 (1972) (citation omitted). "The search for reliability of a citizen informer is essentially shifted from . . . personal reliability, as in the case of police informers, to . . . 'observational' reliability." Loveday v. Wisconsin, 247 N.W.2d 116, 128 (Wisc. 1976) (quoting Wisconsin v. Knudson, 187 N.W.2d 321, 325-26 (Wisc. 1971)).

Here, Officer Neifeld received an anonymous tip about narcotics distribution centered around a two-toned SUV. The tip said that the seller was a female with orange-tipped dreadlocks. In response to this information, Officer Neifeld drove by the parking lot and observed a woman with orange-tipped dreadlocks and a two-toned SUV. Therefore, "significant aspects of the [concerned citizen's] information [were] independently corroborated," Gregory, 22

- 5 -

Va. App. at 106, 468 S.E.2d at 120 (quoting Bulatko, 16 Va. App. at 137, 428 S.E.2d at 307), by Officer Neifeld.

### b. Officer Neifeld's Confirmation of the Substance of the Tip

Officer Neifeld further corroborated the observational reliability of the concerned citizen's tip. After locating Gaiters in the parking lot, Officer Neifeld parked his car across the street from the lot and watched Gaiters for an hour and a half. During that time, the officer saw Gaiters interact with approximately five individuals. During each interaction, the individual would arrive at the parking lot, either by car or on foot, and approach Gaiters. After the initial contact, Gaiters would briefly climb into the SUV. She would then talk with the individual again—either in front of the SUV, or in the individual's car. After a short interaction, Gaiters would walk away and the other individual would leave. Based upon Officer Neifeld's experience and training as an officer, he testified that he believed that Gaiters's behavior was consistent with drug distribution. Moreover, the interactions Officer Neifeld witnessed were similar to controlled drug buys he had previously participated in at that same parking lot. This testimony was relevant because a reasonable suspicion analysis "allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them." Branham, 283 Va. at 280, 720 S.E.2d at 78 (quoting Arvizu, 534 U.S. at 273).

Officer Neifeld was therefore able to corroborate with his own observations the concerned citizen's claim that Gaiters was possibly dealing narcotics out of, or "based around," her two-toned SUV. This degree of independent corroboration provided Officer Neifeld's tip with even greater indicia of reliability than the tips described in White, Navarette, or J.L. Thus, it was constitutionally permissible for Officer Neifeld to detain Gaiters while he investigated to

either confirm or dispel his suspicion.[2]  Accordingly, the trial court erred in granting the motion to suppress the evidence the officers found.

III.

For the foregoing reason, we conclude that the trial court erred in ordering the suppression of the evidence.[3]  Therefore, we reverse the ruling of the trial court and remand the case for further proceedings consistent with this opinion.

<u>Reversed and remanded</u>.

---

[2] We base our analysis upon the totality of the information available to the police officer at the time the alleged seizure occurred.  As a result, we need not address whether the observations of the officer standing alone were sufficient to raise a reasonable suspicion of criminal activity.

[3] Because our disposition of Gaiters's fourth assignment of error is dispositive, we need not reach the remaining assignments of error.  <u>See</u> <u>Morris v. City of Va. Beach</u>, 58 Va. App. 173, 180, 707 S.E.2d 479, 482 (2011) (noting this Court decides cases on "the best and narrowest ground available" (quoting <u>Armstead v. Commonwealth</u>, 56 Va. App. 569, 576, 695 S.E.2d 561, 564 (2010))).