## CIRCUIT COURT OF THE CITY OF ROANOKE

Commonwealth of Virginia

     v.

Sterling G. Dawson, II

March 10, 2003

Case Nos. CR02-1578, CR02-1643

BY JUDGE CLIFFORD R. WECKSTEIN

     Sterling G. Dawson, II, has moved to suppress evidence resulting from his apprehension and subsequent interrogation. He stands indicted in the City of Roanoke for two robberies, using a firearm in the commission of a robbery, and unlawfully wearing a mask in public. He faces similar charges in the Counties of Botetourt and Roanoke. The court heard evidence and argument on the suppression motion on February 11, 2003. Counsel filed memoranda of law, then made further arguments on March 4, 2003. After consideration of the evidence, the arguments, and the authorities, I have made factual findings and legal conclusions, as set forth below.

     Shortly before 1:00 a.m. on September 6, 2002, Botetourt County Deputy Sheriff B. J. (or D. J.) Powell, driving a marked patrol car, was on his way to assist Deputy Hicks in responding to a report of an armed robbery that had occurred minutes before at a Comfort Inn in Botetourt County. As he passed the 604 Minimart in that county, he spotted an older-model Cadillac apparently occupied by three persons. At that juncture, Deputy Powell did not know what information, if any, authorities had about the perpetrators of the

robbery at the motel. Thoroughly familiar with the area, however, he perceived that if the robbers had left the Comfort Inn in a car and headed in the direction from which he was coming, they would then have reached the vicinity of the 604 Minimart. He began to follow the Cadillac and radioed Deputy Hicks to obtain information about the persons who committed the robbery. The information he received, and the observations he was able to make of the car he was following, did not cause him to stop following the Cadillac.

The two vehicles proceeded in tandem on U.S. Route 460 from Botetourt County, through Roanoke County, and into Roanoke City. (Roanoke City and Botetourt County have no adjoining border.) Deputy Powell was not, according to his testimony, in "hot pursuit" (or any other kind of pursuit) of the car. In Roanoke City, more than a mile from Botetourt County, the car that he was following turned left off of Route 460 onto King Street then abruptly turned left again into a Kroger Store parking lot. The driver parked in a marked space. The deputy sheriff at that point had no objectively reasonable articulable basis to suspect that the driver or any occupant of the car had violated the law; he had observed no violation of the law; he had no probable cause to apprehend or arrest. He had not given any audible or visible signal for the car to stop.

The car he had been following was in a parking space; an adjacent space was unoccupied. Deputy Powell stopped his patrol car in the Kroger lot's lane of travel, some ten to fifteen feet from the rear of the Cadillac. As he was leaving his car, he turned on his "emergency equipment," because the vehicle was in a lane of travel. The patrol car did not block the car he had been following. The Cadillac could have pulled straight out of the space, driving forward; the driver could have backed up without hitting Powell's vehicle.

Powell walked to the driver's window. He was in uniform, wearing a badge, and carrying a flashlight. He had not unholstered his pistol. In the deputy's mind at that point, he testified, the occupants of the car would not have been free to leave until he had identified them.

Defendant Dawson was in the car's back seat. A woman was driving; another man was in the front passenger seat. Powell asked the driver for her license and registration. She had neither. (Dawson later turned out to be the only occupant of the car who had any identification.) The front-seat passenger then made a statement to the deputy.

The contents of that statement are not in evidence. It caused the deputy sheriff to reassess the situation, to "detain" the occupants of the car, and to

place a radio call for assistance by other officers.[1] Roanoke City Police officers responded, took custody of Dawson, and took him to the Roanoke City Police Department. There, after receiving *Miranda* warnings, he agreed to speak with officers and made inculpatory statements. Approximately a day later, a Roanoke City detective visited Dawson in the Botetourt County Jail, again advised him of his Constitutional rights, and conducted a follow-up interrogation, eliciting other incriminating statements. By the time the first interrogation took place, Roanoke City warrants had been issued against the defendant. They were not served until after both interrogations had taken place.

The defendant seeks to suppress (i) evidence of the contents of the car in which he was riding, and (ii) the statements he made at the Roanoke Police Department and the Botetourt County Jail. The Deputy Commonwealth's Attorney for the City of Roanoke voluntarily agreed that the Commonwealth would not use, as a part of its case in chief, any statement made by the defendant at the Kroger parking lot.

Since Deputy Powell had no reasonable and articulable suspicion that the driver or occupants of the Cadillac had violated the law, *see Jackson v. Commonwealth*, 22 Va. App. 347, 470 S.E.2d 138 (1996), he had no Constitutional right to stop the vehicle. I hold, however, that he did not "stop" or "seize" the vehicle, within the meaning of Fourth Amendment jurisprudence.

The driver of the Cadillac parked her vehicle in a lot that was open to the public. When Powell also stopped his vehicle in the lot, he did nothing to restrict or restrain the other driver's freedom to drive away. "Law enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen. Even when law enforcement officers have no basis for suspecting a particular individual, they may pose questions, ask for identification, and request consent to search luggage provided they do not induce cooperation by coercive means. If a reasonable person would feel free to terminate the encounter, then he or she has not been seized." *United States v. Drayton*, 536 U.S. 194, 153 L. Ed. 2d 242, 122 S.Ct. 2105, 2110 (2002) (citations omitted). The officer's

---

[1] While the defendant notes that there is no evidence of what the passenger told Deputy Powell, he does not challenge the proposition that, whatever the words were, they furnished probable cause to believe that the occupants of the car should be detained for commission of one or more felonies. *Cf. Howard v. Commonwealth*, 210 Va. 674, 173 S.E.2d 829 (1970); *Lansdown v. Commonwealth*, 226 Va. 204, 211, 308 S.E.2d 106 (1983).

unexpressed determination to detain the occupants of the car until they had produced identification is "of little consequence." *McLellan v. Commonwealth*, 37 Va. App. 144, 154, 554 S.E.2d 699 (2001) (quoting *United States v. Archer*, 840 F.2d 567, 572 (8th Cir. 1988)). In considering whether or not a reasonable person would believe that he was free to leave the scene of an encounter with the police, courts look to such things as "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *McLellan*, 37 Va. App. at 152 (quoting *United States v. Mendenhall*, 446 U.S. 544, 554, 64 L. Ed. 2d 497, 100 S. Ct. 1870 (1980)) (other citations omitted). There is no evidence of any of these things in this case. *See also McCain v. Commonwealth*, 261 Va. 483, 490-91, 545 S.E.2d 541 (2001) (officer approached stationary vehicle, asked driver and companion "for some ID" "without any show of force or display of authority that would have led a reasonable person to believe that he was not free to leave the scene of the encounter.")

Under Virginia Code § 19.2-249, a Botetourt County Deputy Sheriff has "jurisdiction to make arrests and preserve the peace" within 300 yards of the boundary of the county. (As do most town and city police officers, as well as deputy sheriffs in certain counties bordering a city or town under Code § 19.2-250.) *But see Breitbach v. Commonwealth*, 35 Va. App. 604, 608, 546 S.E.2d 764 (2001) (The relevant question is whether the offense occurred within the jurisdiction's "extended boundary," not where the officer was when he made his observations.)

When Deputy Powell detained defendant Dawson and his companions, the deputy sheriff exceeded his statutory authority under § 19.2-249. Under *Mapp v. Ohio*, 367 U.S. 643, 6 L. Ed. 2d 1081, 81 S. Ct. 1684, 86 Ohio Law Abs. 513 (1961), and its progeny, evidence obtained as a result of a constitutionally invalid arrest must be suppressed. However, when an arrest violates a statutory provision, but not the Constitution, "the defendant is not entitled to have evidence seized pursuant to that arrest excluded." *Penn v. Commonwealth*, 13 Va. App. 399, 406-07, 412 S.E.2d 189 (1991), *affirmed*, 244 Va. 218, 420 S.E.2d 713 (1992).

> "Historically, searches or seizures made contrary to provisions contained in Virginia statutes provide no right of suppression unless the statute supplies that right." Virginia employs the rule of *Weeks v. United States*, 232 U.S. 383, 58 L. Ed. 652, 34 S. Ct. 341 (1914), made applicable to the states by *Mapp v. Ohio*,

367 U.S. 643, 6 L. Ed. 2d 1081, 81 S. Ct. 1684, 86 Ohio Law Abs. 513 (1961), that evidence obtained in violation of constitutional proscriptions against unreasonable searches and seizures may not be used against an accused. However, our Supreme Court has steadfastly refused to extend that rule to encompass evidence seized pursuant to statutory violations, absent an express statutory provision for suppression.

*Troncoso v. Commonwealth*, 12 Va. App. 942, 944, 407 S.E.2d 349 (1991) (citations omitted); *accord People v. Hamilton*, 465 Mich. 526, 638 N.W.2d 92 (2002).

In *Hamilton*, a city police officer stopped a vehicle outside his jurisdiction and eventually arrested the driver for the misdemeanor of operating under the influence of liquor. (While it later turned out that the defendant had been convicted on two previous occasions, making the offense a felony, the officer did not know this when he made the arrest.) The Michigan Supreme Court concluded the police officer lacked statutory authority to arrest for the misdemeanor. "The essential holding of *Hamilton* was that there is no exclusionary rule requiring suppression of evidence flowing from an arrest by a police officer that is only "statutorily illegal," but does not violate the Fourth Amendment." *Bright v. Littlefield*, 465 Mich. 770, 641 N.W.2d 587, 590, n. 5 (2002); *People v. McKay*, 27 Cal. 4th 601, 41 P.3d 59, 66, 117 Cal. Rptr. 2d 236 (2002) ("the United States Supreme Court has never ordered a state court to suppress evidence that has been gathered in a manner consistent with the federal Constitution but in violation of some state law or local ordinance. To the contrary, the high court has repeatedly emphasized that the Fourth Amendment inquiry does not depend on whether the challenged police conduct was authorized by state law."); *cf., Atwater v. City of Lago Vista*, 532 U.S. 318, 149 L. Ed. 2d 549, 121 S. Ct. 1536 (2001) (no Constitutional violation in effecting physical arrest for offense that carries only a fine); *Michigan v. DeFillippo*, 443 U.S. 31, 61 L. Ed. 2d 343, 99 S. Ct. 2627 (1979) (suppression inappropriate when arrest was pursuant to ordinance later held unconstitutional).

Because the defendant's arrest was not constitutionally invalid, his motion to suppress must be denied. The view that I take of the case obviates any necessity to address the Commonwealth's alternative arguments.

An order will enter, denying the motion to suppress, incorporating this opinion letter, and preserving the defendant's objections to this ruling.