COLE, Senior Judge.
Leonard Shelton Jackson appeals his conviction for possessing cocaine with the intent to distribute. He contends that the trial court erred in denying his motion to suppress the cocaine. Finding no error, we affirm.
In reviewing a trial court’s denial of a motion to suppress, “the burden is upon [the appellant] to show that this ruling, when the evidence is considered most favorably to the Commonwealth, constituted reversible error.” Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731, cert. denied, 449 U.S. 1017, 101 S.Ct. 579, 66 L.Ed.2d 477 (1980).
*350 BACKGROUND
In the early hours of April 14, 1994, while working off-duty in a high-crime area, Officer John Bandy “saw muzzle flash” and “heard several shots [fired] from handguns.” Bandy saw a group of seven or eight people standing in the area where the shots originated. A tan Oldsmobile was parked near the group. As Bandy approached to investigate,
several subjects evidently saw [him] or something, because they went to the Oldsmobile, went inside the Oldsmobile. The doors opened and so forth. The trunk opened. The trunk was shut, the doors were shut, and [Bandy] went up to the subjects[, who had walked away from the car,] and started patting down a couple of the subjects [including appellant] for weapons.
Bandy found a pager on appellant, but discovered no weapon on him. Bandy testified that he also “combfed] the area” and found no weapon.
When Officer Stephanie Davis arrived in a marked cruiser, Bandy told her what he had seen. Bandy told Davis “to go around the corner [and wait] ..., they’re probably going to come back to the car and get the guns back out.” Bandy watched the area and saw “[t]hree subjects g[e]t into the car.” A fourth subject stood on the corner as an apparent lookout. The car’s lights came on “as if the car was going to” leave. Bandy radioed for Davis to approach the area, but when her police cruiser approached, the lookout “holler[ed] something at the car,” causing the three people in the car to get out of the car and run behind an apartment building. Bandy again told Davis to park out of sight; he told Davis that he would signal her when the Oldsmobile left. After Davis left the area, the subjects entered the vehicle and drove away. Davis followed the car, and Bandy followed Davis in his personal vehicle. Davis stopped the car, and appellant, who was driving, got out and began to walk toward some apartments. Davis ordered appellant to get back in the car.
Appellant had no driver’s license, and he “gave [Bandy] permission to search the car.” Bandy found no contraband in *351 the passenger area. Bandy then asked whether he could search the trunk, and, although Bandy saw appellant open the trunk earlier, appellant said the trunk was broken. Appellant told Bandy, “if you can get into [the trunk] you can search it.” Bandy was able to open the trunk. Inside the trunk, Bandy found a jacket; in the jacket, Davis found a bag containing cocaine. The three occupants of the car were arrested.
The female passenger told Bandy that appellant “had some more cocaine in his crotch area.” The police recovered a pager and $394 in currency from appellant. Bandy stated that his main concern in stopping the car was “because of [the possibility that] the gun [was] in the car.” Bandy explained that he “was acting on the original gunfire and him [appellant] going to the vehicle shortly after the gunfire.” Bandy also stated that he searched the area of the gunshots.
Officer Davis testified that she “got a promiscuous shooting call a little bit before there was a call [from Bandy] for assistance, and [Bandy] needed a patrol unit to assist him on a person or persons possibly still had a gun on them or in the car.” Davis corroborated Bandy’s account of appellant and two other subjects entering the car, seeing the police drive up, getting out of the car, and returning to the car later. When appellant drove away, Davis followed. When she activated her emergency lights, appellant’s “car sped away ... and made a right turn” and stopped. Davis “saw a lot of movement in the car. Everyone in the car was bending down. I couldn’t tell if they were reaching or what they were doing. There was just a lot of movement in the vehicle.” Davis thought the occupants were possibly “trying to hide some kind of weapon.” Davis’ primary concern at the time was her “safety, the officer’s safety around me, because of the weapons.” When appellant got out of the car and began walking away, Davis pulled her weapon and told him to wait in the car.
ANALYSIS
Appellant contends that the police unlawfully stopped his car. According to appellant, because the earlier patdown of *352 appellant by Bandy yielded no contraband, the second stop of appellant and his car was, at a minimum, an unlawful stop under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and possibly an unlawful arrest.
“ ‘If there are articulable facts supporting a reasonable suspicion that a person has committed a criminal offense, that person may be stopped in order to identify him, to question him briefly, or to detain him briefly while attempting to obtain additional information.’ ” Williams v. Commonwealth, 4 Va.App. 53, 64, 354 S.E.2d 79, 85 (1987) (quoting Hayes v. Florida, 470 U.S. 811, 816, 105 S.Ct. 1643, 1647, 84 L.Ed.2d 705 (1985)). “[W]hether [a] stop [i]s justified is dependent upon whether ‘the facts available to the officer at the moment of the seizure or the search [would] “warrant a man of reasonable caution in the belief’ that the action was appropriate.’ ” Quigley v. Commonwealth, 14 Va.App. 28, 32, 414 S.E.2d 851, 853-54 (1992) (quoting Terry v. Ohio, 392 U.S. 1, 21-22, 88 S.Ct. 1868, 1880-81, 20 L.Ed.2d 889 (1968)).
Bandy possessed probable cause to believe that a crime had been committed when he saw and heard gunfire. E.g., Code §§ 18.2-280 (willfully discharging firearm in public place, a Class 4 felony or Class 1 misdemeanor, depending on the location), 18.2-286 (shooting in or across a street, a Class 4 misdemeanor), 18.2-286.1 (shooting from vehicle, a Class 5 felony). Therefore, at a minimum, Bandy was justified in briefly detaining the group of people to inquire about the crime and to pat them down for weapons pursuant to Terry if he reasonably feared for his safety. 392 U.S at 21, 88 S.Ct. at 1880. Appellant concedes that the initial patdown was proper and lawful under Terry. However, the critical issue is whether the stop of appellant’s car, after the initial unsuccessful patdown, was lawful, and, if so, upon what basis.
When Bandy’s initial patdown of the appellant and search of the area around the vehicle failed to disclose a weapon, Bandy left the immediate area to observe and investigate further. Although he had seen several people enter and exit the car, Bandy did not know who owned the car and whether the car *353 was capable of being driven. Bandy kept in contact with Davis in case his observations revealed that the car was operational and that someone intended to drive it out of the area while it contained a hidden weapon. During his surveillance, Bandy acquired additional information linking the car with the group, and, specifically, the driver and probable owner. After the car drove away, Bandy directed Davis to follow and stop it.
Davis, who received a dispatch of the shooting, saw appellant and the two passengers act suspiciously when she initially approached the Oldsmobile. Later, when the car left the scene, she stopped it.
Because appellant was in the car, he asserts that the stop was another Terry stop based on the same information possessed by the police when they patted him down. However, the stop of the car was based on newly acquired information, linking appellant with possession of the car. Therefore, the stop of appellant’s car was justified as a Terry stop.
“A police officer may stop a motor vehicle, without probable cause, for investigatory purposes if [the officer] possesses a reasonable and articulable suspicion ‘that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law.’ ” Bulatko v. Commonwealth, 16 Va.App. 135, 136-37, 428 S.E.2d 306, 307 (1993) (quoting Waugh v. Commonwealth, 12 Va.App. 620, 621-22, 405 S.E.2d 429, 429 (1991)). Although the Commonwealth has the burden of proving that such an investigatory stop is lawful, the level of suspicion required for an investigatory stop is less demanding than the standard of probable cause. Id. There are no bright line rules to follow when determining whether a reasonable and articulable suspicion exists to justify an investigatory stop. Instead, courts must consider “the totality of the circumstances—the whole picture.” United States v. Sokolow, 490 U.S. 1, 8, 109 S.Ct. 1581, 1586, 104 L.Ed.2d 1, (1989). “In evaluating whether an investigative detention is unreasonable, common sense and ordinary *354 human experience must govern over rigid criteria.” United States v. Sharpe, 470 U.S. 675, 685, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605 (1985).
Hoye v. Commonwealth, 18 Va.App. 132, 134-35, 442 S.E.2d 404, 406 (1994). See also Delaware v. Prouse, 440 U.S. 648, 653-54, 99 S.Ct. 1391, 1395-96, 59 L.Ed.2d 660 (1979); Terry, 392 U.S. at 21, 88 S.Ct. at 1880; Murphy v. Commonwealth, 9 Va.App. 139, 143, 384 S.E.2d 125, 127-28 (1989).
In Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), the Supreme Court recognized the need for police officers to adopt an “intermediate response” rather than ignore a dangerous situation and allow a possible crime to go uninvestigated. Justice Rehnquist stated in Adams:
The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, Terry recognizes that it may be the essence of good police work to adopt an intermediate response. A brief stop of a suspicious individual in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time.
Id. at 145—46, 92 S.Ct. at 1923-24 (citations omitted).
Successive investigatory Terry stops of a possible suspect are not per se unlawful. See United States v. Ilazi, 730 F.2d 1120, 1125-26 (8th Cir.1984).
To so hold would preclude law enforcement officials from stopping a suspect a second time whenever the first stop did not provide probable cause, even though it tended to confirm their suspicions of illegal activity. We believe that to adopt a per se rule prohibiting successive investigatory stops would unduly hinder efforts to interdict illegal [behavior].
Id. at 1126. See also State v. Aillon, 202 Conn. 385, 521 A.2d 555, 563 (1987) (approving “second stop” that “ha[s] a different impetus,” or is based on different facts); United States v. *355 Peters, 10 F.3d 1517, 1523 (10th Cir.1993) (holding successive stop illegal absent additional, new basis for second stop).
In Jha v. Commonwealth, 18 Va.App. 349, 444 S.E.2d 258 (1994), we approved a second Terry stop of a suspect where police officers obtained additional information that was properly considered with the initial information. We explained that, after the police find nothing illegal from a first Terry stop, “they [a]re not required to ignore the facts that triggered it, and thus, [a]re not precluded from using those facts in establishing probable cause for [a] second detention.” Jha, 18 Va.App. at 354, 444 S.E.2d at 260 (citing Ilazi, 730 F.2d at 1126).
Viewing the totality of the circumstances underlying the stop of appellant’s car, we consider the information possessed by the police at the time of the initial patdown/Terry stop (the old information) in conjunction with information acquired after the paidown/Terry stop (the new information).
From the old information, the police knew that a crime had been committed, that the weapon had not been recovered, and that it might be concealed or hidden in the area or in the car. The unsuccessful patdown established that appellant or others in the group did not physically possess the weapon. Although Bandy saw suspicious activity involving the car, no evidence established who owned the car. Moreover, it was operational and mobile, and, thus, capable of transporting a hidden weapon.
The warrantless search of an automobile, “where there are both probable cause to believe the car contains evidence of crime and exigent circumstances,” is a well established exception to the warrant requirement. McCary v. Commonwealth, 228 Va. 219, 227, 321 S.E.2d 637, 641 (1984).
Instead of forcibly entering the stationary car and searching it, Bandy and Davis waited and observed. During their observations, the officers gained additional information. They saw three suspects enter the car while a lookout stationed himself on the corner. When Davis approached the car, the lookout signaled to the three occupants, who got out of the *356 car. Finally, Bandy and Davis saw a suspect from the group (appellant) drive the vehicle from the area.
Therefore, the police gained additional evidence after the unsuccessful patdown of appellant to justify the stop of the car. They observed three people enter the parked car, saw one of the group members take control of the car, and learned that the car was operational, and, thus, had the ability to leave the area and possibly transport a hidden weapon to another location.
The combined effect of the old and new information provided Bandy and Davis with sufficient reasonable and articulable suspicion that the occupants and/or vehicle were subject to seizure.
After appellant stopped his car, got out, and tried to leave, Davis had authority to maintain the status quo and order him to remain there. “Once an officer has lawfully stopped a suspect, he is ‘authorized to take such steps as [are] reasonably necessary to protect [his and others’] personal safety and to maintain the status quo during the course of the stop.’ ” Servis v. Commonwealth, 6 Va.App. 507, 519, 371 S.E.2d 156, 162 (1988) (quoting United States v. Hensley, 469 U.S. 221, 235, 105 S.Ct. 675, 683-84, 83 L.Ed.2d 604 (1985)). See also Terry, 392 U.S. at 27, 88 S.Ct. at 1883; United States v. Crittendon, 883 F.2d 326, 329 (4th Cir.1989) (holding that the use of handcuffs during an investigatory stop is permissible to maintain the status quo or to protect the officer).
Because the stop was justified, appellant’s consent was not tainted. Accordingly, we find that the trial court did not err in denying appellant’s motion to suppress.

Affirmed.