COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Humphreys and Senior Judge Coleman
Argued at Chesapeake, Virginia


JOSEPH RODGERS OUTTEN
                                              MEMORANDUM OPINION[*] BY
v.       Record No. 1916-09-1                 JUDGE ROBERT J. HUMPHREYS
                                                 SEPTEMBER 28, 2010
COMMONWEALTH OF VIRGINIA


             FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
                            James C. Hawks, Judge

             Gregory K. Matthews (Joseph A. Sadighian; Office of the Public
             Defender, on briefs), for appellant.

             Rosemary V. Bourne, Assistant Attorney General (Kenneth T.
             Cuccinelli, II, Attorney General, on brief), for appellee.


       Joseph Rodgers Outten ("Outten") appeals his conviction in the Portsmouth Circuit Court

("circuit court") on one count of possession of a firearm after having been convicted of a violent

felony, in violation of Code § 18.2-308.2(A).[1]  Outten alleges the trial court erred in refusing to

suppress the evidence against him, arguing it was obtained in violation of his Fourth Amendment

right to be free from unreasonable searches and seizures.  For the reasons that follow, we

disagree with Outten and affirm.

---

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

        [1] There appears to be a clerical error in the sentencing order.  On page 2, the order states
"the Court suspends none of the sentence imposed for *Aggravated Sexual Battery*
(18.2-308.2(A)) (count 1)."  Code § 18.2-308.2(A), however, criminalizes "possession or
transportation of firearms, firearms ammunition, stun weapons, explosives or concealed weapons
by convicted felons," for which Outten was charged.  Outten does not appear to have been
additionally charged with aggravated sexual battery.

Outten contends the trial court erred in denying his motion to suppress. He argues on appeal, as he did in the court below, that Officer Henderson lacked the requisite reasonable suspicion for the seizure of Outten's person. He further reasons that, even if Henderson *did* have reasonable suspicion to support the initial stop, the scope and manner of the detention was so excessive as to require evidence supporting the more rigid standard of probable cause. We disagree.

When reviewing a trial court's denial of a motion to suppress, we view the evidence "in the light most favorable to the Commonwealth, granting to the Commonwealth all reasonable inferences fairly deducible" therefrom. Sabo v. Commonwealth, 38 Va. App. 63, 69, 561 S.E.2d 761, 764 (2002) (citing Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991)). "[W]e are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc). Nevertheless, "'[u]ltimate questions of reasonable suspicion and probable cause . . . involve questions of both law and fact and are reviewed *de novo* on appeal.'" Ramey v. Commonwealth, 35 Va. App. 624, 628, 547 S.E.2d 519, 521 (2001) (quoting Neal v. Commonwealth, 27 Va. App. 233, 237, 498 S.E.2d 422, 424 (1998)). Ultimately, the burden rests upon the defendant to show that the denial of his suppression motion constituted reversible error. McCain v. Commonwealth, 261 Va. 483, 490, 545 S.E.2d 541, 545 (2001) (citing Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980)).

It is well settled that "[a] police officer may conduct a brief investigatory stop when the officer, in light of his training and experience, has reasonable, articulable suspicion that criminal activity is afoot." Jones v. Commonwealth, 279 Va. 665, 673, 691 S.E.2d 801, 805 (2010)

(citing Terry v. Ohio, 392 U.S. 1, 21, 27, 30 (1968)).  Protections afforded by the Fourth

Amendment require, at a minimum, that any detention of an individual no matter how brief "be

justified by an objective manifestation that the person stopped is engaged, or is about to be

engaged, in criminal activity."  Id. (citing United States v. Cortez, 449 U.S. 411, 417 (1981)).  To

that end, "an officer's subjective characterization of observed conduct is not relevant to a court's

analysis concerning whether there is a reasonable suspicion because the Court's review of

whether there was reasonable suspicion involves application of an objective rather than a

subjective standard."  Harris v. Commonwealth, 276 Va. 689, 697, 668 S.E.2d 141, 146 (2008).

In deciding "whether a police officer had a particularized and objective basis for

suspecting that the person stopped may be involved in criminal activity, a court must consider

[not only] the totality of the circumstances," Ewell v. Commonwealth, 254 Va. 214, 217, 491

S.E.2d 721, 722 (1997), but also the fact that "trained law enforcement officers may be 'able to

perceive and articulate meaning in given conduct which would be wholly innocent to the

untrained observer,'" Castaneda v. Commonwealth, 7 Va. App. 574, 580, 376 S.E.2d 82, 85

(1989) (quoting United States v. Gooding, 695 F.2d 78, 82 (4th Cir. 1982)).

> "The Fourth Amendment does not require a policeman who lacks
> the precise level of information necessary for probable cause to
> arrest to simply shrug his shoulders and allow a crime to occur or a
> criminal to escape.  On the contrary, Terry recognizes that it may
> be the essence of good police work to adopt an intermediate
> response.  A brief stop of a suspicious individual, in order to
> determine his identity or to maintain the status quo momentarily
> while obtaining more information, may be most reasonable in light
> of the facts known to the officer at the time."

Simmons v. Commonwealth, 217 Va. 552, 554-55, 231 S.E.2d 218, 220 (1977) (quoting Adams

v. Williams, 407 U.S. 143, 145-46 (1972)).  "The welfare of the public demands that a law

enforcement officer use his faculties of observation and act thereon within proper limits."

Howard v. Commonwealth, 210 Va. 674, 677, 173 S.E.2d 829, 832 (1970).  "It is not only the

- 3 -

right, but the duty, of a police officer to investigate suspicious conduct, and he may 'in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest.'" Id. (quoting Terry, 392 U.S. at 22).

In this case, the facts known to Detective Henderson at the time of the seizure, viewed objectively and taken in their entirety, clearly provided Detective Henderson with the requisite reasonable suspicion for the seizure of Outten's person. Detective Henderson was approached at approximately ten o'clock p.m. by two "excited or agitated" females who reported to Henderson that an individual was walking down Lincoln Street toward Deep Creek with a gun in his hands. The young women were "very insistent" that Henderson look down the street. Henderson looked and observed Outten with a firearm in his hand headed toward the intersection of Lincoln and Deep Creek. When Henderson "informed dispatch of what was going on," he was told that another "concerned citizen" had already called in similar information.

Henderson noticed that Outten was "staggering back and forth across the street" on the sidewalk. Outten was "[v]ery unsteady on his feet, [and] it appeared to [Henderson] that [Outten] could not maintain a straight line of walk." Henderson also noted that Outten was holding a rifle across his body, with one hand directly on the butt stock of the rifle and one hand on the forearm of the rifle. According to Henderson's training and experience, which included five years of active military duty in the Middle East following September 11, 2001, such a posture was "aggressive," and indicated a ready to use position. More importantly, Outten was walking in this manner toward a group of people exiting a nearby church.

It is simply of no moment, as Outten suggests, that it is not unlawful to carry a firearm in public. It does not necessarily follow from one's right to bear arms that bearing a weapon in a "ready to use position" may not properly be a component of reasonable suspicion that criminal

activity may be afoot, especially when combined with apparent intoxication. Henderson's actions were reasonable, especially in light of his training and experience, to dispel his understandable suspicion that Outten was either intoxicated, or that he was about to commit a crime of some sort with the firearm. Thus, Outten's brief seizure for the purpose of investigating the circumstances did not offend the Fourth Amendment.

We likewise reject Outten's secondary assertion that, even if the seizure of his person was based upon reasonable suspicion, the manner in which he was seized requires a showing of probable cause. It is true that Henderson initially approached Outten with his weapon drawn and ordered Outten to drop the rifle and get down on the ground. It is also true that Henderson placed Outten in handcuffs. However, Henderson repeatedly testified that Outten was merely in investigative detention until Henderson could "determine what the situation was." Henderson explained that although Outten dropped the rifle when ordered to do so, Henderson could not immediately assess whether or not Outten was in possession of other weapons. He could not, therefore, know whether his safety or that of the individuals standing at the nearby church was still at risk.

> Although we recognize that police procedures during a Terry stop can . . . be so intrusive . . . as to trigger the full protection of the Fourth and Fourteenth Amendments, there is no litmus-paper test for distinguishing . . . when a seizure exceeds the bounds of an investigative stop. The Supreme Court has instructed that, in evaluating whether an investigative detention is unreasonable, common sense and ordinary human experience must govern over rigid criteria. While the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time, the scope of the intrusion permitted will vary with each case.

Thomas v. Commonwealth, 16 Va. App. 851, 856-57, 434 S.E.2d 319, 322-23 (1993) (citations omitted) (internal quotation marks omitted). "The use of handcuffs during this phase of the investigation does not alter our analysis. Brief, complete deprivations of a suspect's liberty,

- 5 -

including handcuffing, 'do not convert a stop and frisk into an arrest so long as the methods of restraint used are reasonable to the circumstances.'" Id. at 857, 434 S.E.2d at 323 (quoting United States v. Crittendon, 883 F.2d 326, 329 (4th Cir. 1989)). "Once an officer has lawfully stopped a suspect, he is 'authorized to take such steps as [are] reasonably necessary to protect [his and others'] personal safety and to maintain the status quo during the course of the stop.'" Jackson v. Commonwealth, 22 Va. App. 347, 356, 470 S.E.2d 138, 143 (1996) (quoting Servis v. Commonwealth, 6 Va. App. 507, 519, 371 S.E.2d 156, 162 (1988)). "'Reasonableness is judged from the perspective of a reasonable officer on the scene allowing for the need of split-second decisions and without regard to the officer's intent or motivation.'" Thompson v. Commonwealth, 54 Va. App. 1, 7, 675 S.E.2d 832, 834-35 (2009) (quoting Scott v. Commonwealth, 20 Va. App. 725, 727, 460 S.E.2d 610, 612 (1995)).

Given the time of night and the manner with which Outten was handling the rifle, it was not unreasonable for Henderson to order Outten to the ground and handcuff him, briefly, for further investigation. Indeed, the protection of both the police and the public, which is of paramount importance, clearly required such action under the facts presented. Contrary to Outten's assertion, a showing of probable cause was simply not required in order to place Outten in handcuffs; Outten was not yet under arrest. In other words, the manner in which Henderson dealt with Outten was minimally intrusive and, as such, was reasonable and appropriate for purposes of the Fourth Amendment.

For the foregoing reasons, we hold the trial court did not err in refusing to suppress the evidence in this case, and we remand the matter to the trial court for the sole purpose of correcting the apparent clerical error in the sentencing order.

<u>Affirmed and remanded.</u>