# COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Huff, O'Brien and Senior Judge Frank
Argued by teleconference


RONDEVER WILLIAMS, S/K/A
  RONDEVER GEOVAGIA WILLIAMS

                                                    MEMORANDUM OPINION[*] BY
v.       Record No. 1972-18-1                       JUDGE GLEN A. HUFF
                                                    APRIL 14, 2020

COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF SOUTHAMPTON COUNTY
                            Carl E. Eason, Jr., Judge

            S.H. Weaver, Sr., for appellant.

            A. Anne Lloyd, Assistant Attorney General (Mark R. Herring,
            Attorney General, on brief), for appellee.


        Pursuant to a conditional guilty plea, Rondever Geovagia Williams ("appellant") was

convicted of possession of cocaine and sentenced to two years' incarceration with one year and

nine months suspended.  On appeal, he challenges the trial court's denial of his motion to

suppress.  Specifically, appellant contends that law enforcement lacked a reasonable, articulable

suspicion to conduct a successive traffic stop of his vehicle because it followed an initial

stop-and-frisk of appellant that discovered no contraband.

        This Court agrees.  An initial search that finds no contraband necessarily diminishes the

suspicion which justified it.  Therefore, law enforcement must discover some new information to

justify a second stop or search.  Here, the only new information was an unreliable, bare

accusation that an individual levied only after being arrested.  Given the totality of the

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

circumstances, that accusation was insufficient to revive any reasonable, articulable suspicion which justified the initial stop-and-frisk of appellant.

## I. BACKGROUND

On June 18, 2008, members of the Franklin Police Department were conducting narcotics surveillance in the area of Elm Street and Chestnut Street. That area was known to the officers as having high drug activity. The officers were patrolling in an unmarked vehicle and wore plain clothes with tactical vests on top.

On the corner of Elm Street and Chestnut Street, the officers saw multiple individuals, including: appellant, Marcellus Smallwood, and Michael Scott. The officers observed a red truck pull up to the corner and appellant, Smallwood, and Scott approached the vehicle. After speaking with the driver of the truck, either Smallwood or Scott reached into their pocket and appeared to hand something to the driver. Based on these observations, the officers believed that a hand-to-hand drug transaction had occurred.

The officers exited their vehicle, approached on foot, and directed all of the individuals to stand still. As the officers approached, the truck sped off at a high rate of speed. At the same time, Smallwood ran from the scene on foot. Appellant and Scott complied with the officers' command and stayed at the street corner. Two officers pursued Smallwood while the others approached appellant and Scott.

As the officers approached appellant and Scott, they asked if they had "anything on them, weapons or anything of the sort." Appellant and Scott said they did not. The officers then conducted a pat down of both appellant and Scott. No weapons, drugs, or other types of contraband were recovered from appellant. After the pat down, appellant was told he was free to leave. Appellant walked away and got in a car that was parked a short distance away.

Meanwhile, two other officers pursued Smallwood. The two officers saw Smallwood throwing items away from his person. The officers apprehended Smallwood and then recovered the items he had thrown on the ground. The items that were thrown turned out to be small baggies containing "white rock substances" that were consistent with the appearance of crack cocaine. The officers placed Smallwood under arrest. Smallwood "made a statement immediately, once the handcuffs were placed on him," that the "real dealer" is the man that's getting in the car down the street, referring to appellant.

Upon receiving Smallwood's tip, the arresting officers contacted the officers who had remained on the corner of Elm Street and Chestnut Street and relayed the tip. Those officers then conducted a traffic stop of the vehicle in which appellant was riding as a passenger. The officers asked appellant to step out of the vehicle. After appellant complied, the officers searched his person. In his pants' pocket, they found a razor blade and a plastic baggie containing white residue which was "wrapped up inside" a dollar bill. Appellant was arrested for possession of cocaine. Subsequent testing confirmed that the white residue was cocaine.

On July 10, 2009, appellant filed a motion to suppress. Appellant argued that the officers lacked justification to either stop his vehicle or conduct the second search of his person. During the hearing on the motion, the Commonwealth attempted to bolster the reliability of Smallwood's tip via the testimony of Officer Howell, the officer to whom Smallwood provided the tip. Officer Howell testified that he had known Smallwood for four years by virtue of Smallwood being on the high school football team. Officer Howell explained that he has a relationship with the football coach and often speaks to the team and/or individual players to "help steer the player in the right directions." Officer Howell did not provide any further information about his relationship with Smallwood.

The trial court ultimately denied appellant's motion to suppress. On March 9, 2010, appellant entered a conditional guilty plea that preserved his right to appeal the trial court's ruling on the motion to suppress. Appellant's sentencing hearing was not held until December 6, 2018, due to an unrelated term of incarceration imposed by the state of North Carolina. The trial court sentenced appellant to two years' incarceration with one year and nine months suspended. This appeal followed.

## II. STANDARD OF REVIEW

A review of a defendant's claim that he was "seized" in violation of the Fourth Amendment presents mixed questions of law and fact that are reviewed *de novo*. Brooks v. Commonwealth, 282 Va. 90, 94 (2011). In making this determination, Virginia courts give deference to any factual findings of the trial court, Harris v. Commonwealth, 276 Va. 689, 694 (2008), but "determine independently whether, under the law, the manner in which the evidence was obtained satisfies constitutional requirements," McCain v. Commonwealth, 261 Va. 483, 489 (2001). The appellant has the burden to "show that the [trial court's] ruling, when the evidence is considered in the light most favorable to the Commonwealth, constituted reversible error." Ford v. Commonwealth, 28 Va. App. 249, 255 (1998).

## III. ANALYSIS

Appellant contends that Smallwood's tip, in conjunction with all the information available to the officers at the time of the stop, did not constitute reasonable suspicion to conduct the traffic stop.[1] This Court agrees. The stop of appellant here came in the form of a successive

---

[1] The Commonwealth asserts that appellant's assignment of error was not preserved in the proceedings below and is thus barred from consideration by Rule 5A:18. Yet, the record reflects that counsel for the appellant presented his motion to suppress by arguing that appellant was "stopped later illegally" and in overruling appellant's motion to suppress, the court specifically remarked that the police "had the right to stop" appellant's vehicle. Moreover, the Commonwealth concedes in a footnote on page 6 of their brief that "the trial court . . . ruled on

stop following an initial stop-and-frisk. That initial stop-and-frisk diminished the reasonable, articulable suspicion undergirding it.[2] Smallwood's tip lacked indicia of reliability and, therefore, failed to revive the reasonable, articulable suspicion needed to justify the second stop. Accordingly, the officers violated appellant's Fourth Amendment rights when they subjected appellant to that stop.

The Fourth Amendment protects individuals against unreasonable searches and seizures. U.S. Const. amend. IV. Warrantless searches and seizures are "presumptively unreasonable." Osburn v. Virginia Dep't of Alcoholic Beverage Control, 295 Va. 10, 17 (2018). "Although limited in purpose and length of detention, an investigative traffic stop constitutes a seizure within the meaning of the Fourth Amendment." Harris, 276 Va. at 694 (citing Delaware v. Prouse, 440 U.S. 648, 653 (1979)).

In order for an investigative traffic stop, or a Terry stop, to satisfy the Fourth Amendment, law enforcement must have "reasonable suspicion, based upon specific and articulable facts, that criminal activity is 'afoot'" to justify the stop. Id. (citing United States v. Sokolow, 490 U.S. 1, 7 (1989)). Reasonable suspicion requires more than an "inchoate and unparticularized suspicion or 'hunch.'" Terry v. Ohio, 392 U.S. 1, 27 (1968). It must be based on "fair inference in light of [the officer's] experience." Reid v. Georgia, 448 U.S. 438, 441 (1980). Ultimately, whether law enforcement has reasonable suspicion to justify a stop of a person depends on the "totality of [the] circumstances," Parker v. Commonwealth, 255 Va. 96,

_____

the legality of the stop of the vehicle in which [appellant] was traveling." Therefore, this Court determines that appellant's argument regarding reasonable, articulable suspicion is preserved. Because this argument is dispositive, this Court need not determine whether appellant properly presents on appeal any argument that the officers lacked probable cause to conduct the second search of his person.

[2] Because appellant challenges only the second stop, this Court assumes, without deciding, that the first stop-and-frisk was justified by a reasonable, articulable suspicion.

104 (1998), where the court views the facts "objectively through the eyes of a reasonable police officer" and determines if such an officer "could have entertained an articulable and reasonable suspicion that the defendant was involved in unlawful activity," Murphy v. Commonwealth, 9 Va. App. 139, 144 (1989) (citing Zimmerman v. Commonwealth, 234 Va. 609, 612 (1988)).

The purpose of a Terry stop is "to permit an officer with reasonable suspicion of criminal activity to quickly confirm or dispel that suspicion." Davis v. Commonwealth, 35 Va. App. 533, 539 (2001) (citing Illinois v. Wardlow, 528 U.S. 119, 126 (2000)). Accordingly, when an officer initiates a Terry stop, searches the individual, and finds no contraband, the reasonable suspicion justifying the stop has necessarily diminished. See, e.g., United States v. Peters, 10 F.3d 1517, 1522 (10th Cir. 1993) ("[W]hen reasonable suspicion has been dispelled or probable cause has not developed, the conduct upon which the officer originally based his suspicions has proved to be an illusory ground for suspicion under the particular circumstances, and thus, has been exhausted." (citing United States v. Place, 462 U.S. 696, 717 (1983))), cited with approval by Jackson v. Commonwealth, 22 Va. App. 347, 354-55 (1996). Furthermore, successive stops of an individual are "inherently more intrusive and coercive than the first." See United States v. Padilla-Esparza, 798 F.3d 993, 1000 (10th Cir. 2015) (quoting United States v. Ilazi, 730 F.2d 1120, 1126 (8th Cir. 1984)).

Nevertheless, successive Terry stops "are not per se unlawful." Jackson, 22 Va. App. at 354. As with all other Terry stops, successive stops are assessed by examining the totality of the circumstances. Jha v. Commonwealth, 18 Va. App. 349, 354 (1994). Even if law enforcement "find[s] nothing illegal from a first Terry stop, 'they [a]re not required to ignore the facts that triggered it.'" Jackson, 22 Va. App. at 355 (quoting Jha, 18 Va. App. at 354). Neither may they ignore the fact that the first search found nothing and, therefore, tends to negate the reasonable suspicion which supported that first search. Accordingly, a successive Terry stop must be

supported by some new information sufficient to revive the officer's reasonable, articulable suspicion.  See id. at 355-56; Jha, 18 Va. App. at 354.

Here, the only new information which could have revived the officer's reasonable, articulable suspicion towards appellant was Smallwood's tip.  Therefore, before reaching the totality of the circumstances, it is incumbent upon this Court to assess the reliability of Smallwood's tip.

The weight a tip receives in the totality of the circumstances depends on the interplay between the informant's reliability and basis of knowledge.  See Jackson v. Commonwealth, 267 Va. 666, 673 (2004).  A tip with a relatively low degree of reliability may be offset by showing the informant had a strong basis of knowledge; and *vice versa*.  Id.  To this end, two categories of informants have emerged from the jurisprudence:  anonymous informants and known informants.  "An anonymous tip has a relatively low degree of reliability, requiring more information to sufficiently corroborate the information contained in the tip."  Harris v. Commonwealth, 276 Va. 689, 695 (2008) (citing Florida v. J.L., 529 U.S. 266, 270 (2000)).  Tips from a known informant, on the other hand, generally carry a higher degree of reliability because their "reputation can be assessed" and they "can be held responsible if [their] allegations turn out to be fabricated."  Id.

The universe of known informants is diverse, however.  Information provided by a disinterested citizen is more reliable and may be given more weight than "a criminal informer, whose motives are less likely to be pure."  Reed v. Commonwealth, 36 Va. App. 260, 267-68 (2001).  Furthermore, criminal informants "typically provide information after they have been apprehended by the police and after it is apparent to them that the police already know of their own involvement in the serious offense."  Russell v. Commonwealth, 33 Va. App. 604, 616 (2000) (quoting 2 Wayne R. LaFave, Search and Seizure § 3.3(c), at 128 (3d ed. 1996)).

Therefore, in order for law enforcement to rely on a criminal informant's tip as a basis for finding reasonable suspicion, "some indicia of [the] informant's credibility [is] required." Polston v. Commonwealth, 24 Va. App. 738, 748 (1997). The reliability of a criminal informant's tip may be established in multiple ways, including by showing that:

> (1) the informer has previously given reliable information; (2) the informer previously has worked with the police and has made controlled buys or worked in narcotic surveillance or other law enforcement efforts; (3) the informer provided detailed information that only a person who had actually observed the criminal activity would know; or (4) the informer has made a declaration against his penal interest.

Russell, 33 Va. App. at 611 (collecting cases).

Here, Smallwood—having just been arrested for possession of crack cocaine and distribution—was a known, criminal informant. See Polston, 24 Va. App. at 748 (holding that a recent arrestee "whose cooperation with the authorities began only after his arrest" was not a disinterested "'citizen' informer"). Therefore, to justify reliance on his tip that appellant was the "real dealer," there needed to be some indicia of reliability. Id. However, Smallwood had never given reliable information, nor had he previously participated in controlled buys. He provided neither predictive information that could be verified nor detailed information that only somebody who observed the criminal activity would know. Furthermore, his declaration that appellant was the "real dealer" was not a declaration against his penal interests. Indeed, if anything, it furthered his penal interests to try to shift blame to appellant. Such self-exculpatory statements are "inevitably suspect . . . given the recognized motivation to shift blame" to a co-criminal. Bruton v. United States, 391 U.S. 123, 136 (1968); see also 5 Wigmore, Evidence § 1477, at 358 n.1 (J. Chadbourn rev. 1974) (recognizing that an accomplice has an interest in "confessing and betraying his cocriminals").

Furthermore, the fact that Officer Howell previously knew Smallwood by virtue of working with the football team is of no import. Officer Howell provided no testimony regarding Smallwood's candor, veracity, or trustworthiness. Nor did Officer Howell provide any specific information about his interactions with Smallwood. Without such testimony, there is no basis to find Smallwood's tip any more reliable than any other criminal informant. Accordingly, this Court determines that Smallwood's self-serving statement that appellant was the "real drug dealer" lacks any indicia of reliability.

Returning to the totality of the circumstances, this Court holds that the officers lacked a reasonable, articulable suspicion to conduct a second Terry stop. Officers believed that they witnessed a hand-to-hand drug transaction between the driver of the truck and somebody in appellant's presence. Notably, appellant did not make the hand-to-hand transaction, but was merely standing near the truck. After officers approached, appellant complied with their commands to stay and submit to a stop-and-frisk. After finding nothing, the officers released appellant. While the Court assumes, without deciding, that this first stop-and-frisk was supported by a reasonable, articulable suspicion, the fruitless stop-and-frisk necessarily diminished that suspicion. Therefore, some new information was required to revive it.

The Commonwealth contends that Smallwood's tip provided that new information. But, Smallwood's "tip" was just an assertion that he wasn't the real criminal, somebody else was. As noted above, that tip lacked any indicia of reliability. Furthermore, the officer who apprehended Smallwood had just recovered baggies containing crack cocaine. Simultaneously, other officers searched appellant and found no drugs. Therefore, the officers, at the time they stopped appellant's vehicle, had reason to know four things: (1) appellant did not conduct the hand-to-hand transaction—either Smallwood or Scott did; (2) appellant did not have any drugs on him that were detectable by a stop-and-frisk; (3) Smallwood did possess a significant amount

of crack cocaine; and (4) Smallwood exclaimed immediately after being arrested that he wasn't the drug dealer, but that appellant was the "real dealer."

Given these circumstances, this Court determines that the officers lacked a reasonable, articulable suspicion for the second Terry stop. Any suspicion undergirding the stop-and-frisk was diminished when the initial search found no contraband, and Smallwood's unreliable "tip" is insufficient to revive that suspicion.

Appellant "entered a conditional guilty plea pursuant to Code § 19.2-254, which provides in part that '[i]f the defendant prevails on appeal, he shall be allowed to withdraw his plea.'" Hasan v. Commonwealth, 276 Va. 674, 681 (2008). Appellant has prevailed on appeal. Therefore, "[h]e is entitled by statute to withdraw his plea. [Appellant] must be given the opportunity to reassess the admissible evidence that may be used against him and, if the Commonwealth wishes to continue its prosecution, demand a trial if he so desires." Id.

## IV. CONCLUSION

For the foregoing reasons, this Court reverses the judgment of the trial court and remands the matter for further proceedings not inconsistent with this opinion.

Reversed and remanded.