COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Decker, Judges Beales and Athey
Argued at Richmond, Virginia


THOMAS WESLEY HOLLINGSWORTH

v.      Record No. 1083-24-1

COMMONWEALTH OF VIRGINIA

OPINION BY
CHIEF JUDGE MARLA GRAFF DECKER
NOVEMBER 25, 2025

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Afshin Farashahi, Judge[1]

Amber Novoa Alvarez Torgerson, Assistant Public Defender, for
appellant.

J. Brady Hess, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Thomas Wesley Hollingsworth appeals his conviction, entered on his conditional plea of

guilty, for possessing a firearm after being convicted of a violent felony in violation of Code

§ 18.2-308.2.  The offense occurred when law enforcement found him with a gun in his

possession at the scene of a possible armed robbery.  Hollingsworth argues that the circuit court

erred by denying his motion to suppress the weapon found on his person, suggesting that it was

seized in violation of the Fourth Amendment.  We hold that the circuit court did not err, and we

affirm Hollingsworth's conviction.

---

[1] Judge Stephen C. Mahan ruled on the suppression motion.  Judge Farashahi accepted
the conditional guilty plea and sentenced Hollingsworth.

One night in November 2023, Virginia Beach Police were called to a "dispute with a potential robbery" at a 7-Eleven convenience store. Based on the type of call, the responding officers were "concerned about firearms or [other] weapons." Dispatch told the officers to be on the lookout for two men, one "dark-skinned" and one "lighter-skinned," and the "case comments" described a silver SUV. The officers had no other information at the time. Officer Shaun Brooks and another officer were the first to arrive at the store. They saw a silver SUV parked at a gas pump on store property. Standing beside it were two men who matched the descriptions provided by dispatch. No other vehicles were on that part of the property.

The officers approached the men and told them that they were going to pat them down for firearms. One of the two men, Hollingsworth, was pumping gas and standing in the narrow space between the gas pump and the SUV. From a position in front of Hollingsworth, who was wearing jeans and a baggy hoodie, Brooks "quick[ly]" patted him down. Brooks's partner frisked the other individual. No weapons were found on either man at that time.

Hollingsworth told the officers that he drove the SUV to the convenience store.[3] With his permission, they searched the vehicle but did not find a firearm. Other officers arrived on the scene and searched the surrounding area for a gun, also without success.

---

[2] The appellate court recites the facts "in the light most favorable to the Commonwealth," the prevailing party in the circuit court. *Commonwealth v. Hubbard*, ___ Va. ___, ___ (Sept. 11, 2025) (quoting *Commonwealth v. White*, 293 Va. 411, 413 (2017)). In doing so, the Court discards any evidence that conflicts with the Commonwealth's evidence and "regard[s] as true all the credible evidence favorable to the Commonwealth and all . . . inferences [that can fairly] be drawn []from [that evidence]." *Commonwealth v. Cady*, 300 Va. 325, 329 (2021) (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018) (per curiam)). *See generally Hill v. Commonwealth*, 297 Va. 804, 807-09, 809 n.1 (2019) (considering both the facts presented at the suppression hearing and the facts in the proffer on the conditional guilty plea that favored the Commonwealth).

[3] Hollingsworth was visibly intoxicated during the encounter and admitted that he had just come "from a party where he [had been] drinking."

Officers Donny Luu and Austin Chase were assigned to the area and took over the investigation when they arrived. Brooks relayed to them that he had not spoken with the store clerks, so Luu went inside to interview the clerks. When Officer Luu went inside, another police officer at the scene had already started interviewing the clerks. That officer told Luu that Hollingsworth had displayed a firearm and "possibly . . . demand[ed] money" from a customer, who was no longer at the store.

While Luu was in the store, Chase asked Hollingsworth and his companion if the officers could conduct a more detailed search of their persons. The other man consented, but Hollingsworth refused, saying the police had "already patted [him] down." Chase searched Hollingsworth's companion and "found nothing on him." Luu returned from the store and reported the clerks noted that the gun had an extended magazine. Luu and Chase then went back into the store and confirmed that Hollingsworth was the one who brandished the firearm.

When Officers Luu and Chase returned to the parking lot, Chase told Hollingsworth, who was still being detained, that he was going to pat him down. Hollingsworth again refused to submit to a second pat down, offering instead to turn his pockets inside out. Chase told him that he had been identified as possessing a gun and could not refuse. The officer then frisked Hollingsworth and quickly located a gun with an extended magazine tucked into his waistband.

Prior to trial, Hollingsworth made a motion to suppress evidence of the firearm. He claimed that because the first pat down did not produce a weapon, reasonable suspicion was "diminished" and "precluded law enforcement from conducting an additional search." The Commonwealth presented testimony from Officers Brooks, Luu, and Chase about the encounter and the recovery of the gun. Brooks's body-worn camera footage was admitted into evidence as a defense exhibit.

Brooks testified that the initial pat down he performed "wasn't . . . very good" and that he focused on the pockets of Hollingsworth's pants, "where most firearms are located on individuals." He noted after watching the video footage that he "didn't even touch" Hollingsworth's right hip, where the weapon was later found. Officer Brooks also pointed out that he had not spoken with the store clerks and he informed Chase and Luu he had not done so when they arrived. Officers Luu and Chase confirmed that the clerks identified Hollingsworth as involved in the potential robbery and the person they had seen with a firearm. Chase recalled that he was concerned for officer safety because a gun had been reported in the area but had not yet been recovered. And he confirmed that a firearm was found in the second pat down of Hollingsworth, the one he conducted.[4]

Ruling on the suppression motion, the circuit court noted defense counsel's concession that the officers had reasonable suspicion to detain Hollingsworth when the stop first began, and it found that his detention had not ended at the time of the second pat down. The court agreed that the initial pat down "wasn't . . . very good." And it found that the store clerks were reliable, disinterested witnesses who had observed Hollingsworth with a gun that had an extended magazine and identified him to the officers as the individual with the firearm. The court noted that officers had searched the SUV, the surrounding area, and the other individual a second time and still had not located the firearm. As a result, it ruled the officers reasonably concluded that the firearm was in Hollingsworth's possession and the officer who conducted the initial pat down had simply missed it. The court emphasized that the officers had obtained new, reliable information before the second pat down. It also noted that the pat down was restricted to the

---

[4] The officers testified about other potential offenses for which they might have had probable cause to arrest Hollingsworth that night even if the firearm had not been found, including brandishing and public intoxication. The public intoxication appears to have occurred in their presence, while the brandishing offense did not.

outer layer of Hollingsworth's clothing and was therefore relatively unintrusive. Based on the totality of the circumstances, the court ruled that the second pat down was reasonable, and it denied Hollingsworth's motion to suppress.[5]

After the court denied the motion, Hollingsworth entered a conditional guilty plea, enabling this appeal. He was sentenced to five years in prison with none of that time suspended, with an additional term of two years that was suspended on condition of the successful completion of a period of post-release supervision.

ANALYSIS

Hollingsworth appeals the circuit court's ruling denying his motion to suppress the firearm. On review of a circuit court's decision denying a motion to suppress, the appellate court "determine[s] whether the accused has met his burden to show that the [circuit] court's ruling, when the evidence is viewed in the light most favorable to the Commonwealth, was reversible error." *Knight v. Commonwealth*, 71 Va. App. 771, 782 (2020) (quoting *Cantrell v. Commonwealth*, 65 Va. App. 53, 56 (2015)). A defendant's claim that evidence was seized in violation of the Fourth Amendment to the United States Constitution "present[s] . . . a mixed question of law and fact." *Durham v. Commonwealth*, 303 Va. 310, 321 (2024). "This Court is 'bound by the [circuit] court's findings of historical fact unless plainly wrong or without evidence to support them.'" *Moreno v. Commonwealth*, 73 Va. App. 267, 274 (2021) (quoting *Williams v. Commonwealth*, 71 Va. App. 462, 475 (2020)); *see Durham*, 303 Va. at 321 (noting that the appellate court also "tilt[s] all reasonable inferences toward the prevailing party").

---

[5] The circuit court also concluded that denial of the motion was appropriate under the inevitable discovery doctrine. It stated that, at a minimum, Hollingsworth would have been detained, investigated for driving under the influence, and perhaps arrested on a warrant. Consequently, it found that a search incident to a lawful arrest would have uncovered the weapon.

"[B]ut we independently determine whether the manner in which the evidence was obtained meets the requirements of the Fourth Amendment." *Cole v. Commonwealth*, 294 Va. 342, 354 (2017) (quoting *Cost v. Commonwealth*, 275 Va. 246, 250 (2008)); *Durham*, 303 Va. at 321 (recognizing such a question as one of law that is reviewed de novo). In the end, it is the appellant's burden to show that, when viewing the evidence introduced at both the suppression hearing and the trial or guilty plea hearing "in the light most favorable to the Commonwealth," the circuit court committed reversible error. *Cole*, 294 Va. at 354 (quoting *Cost*, 275 Va. at 250); *see Hill v. Commonwealth*, 297 Va. 804, 807-09, 809 n.1 (2019) (considering the evidence proffered at the conditional guilty plea hearing to the extent it supported affirming the denial of the suppression ruling).

Hollingsworth limits his challenge to the second pat down of his person for weapons. This challenge necessarily relies on the Fourth Amendment, which protects people from unreasonable searches and seizures. *See Poulson v. Commonwealth*, 304 Va. 188, 193 (2025). We begin with a fundamental principle: "The 'touchstone of th[is a]mendment is "reasonableness,"'" as measured in objective terms." *Barnes v. Felix*, 605 U.S. 73, 79 (2025) (quoting *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)); *see Commonwealth v. Hubbard*, ___ Va. ___, ___ (Sept. 11, 2025). An inquiry into the reasonableness of police action that qualifies as a search or seizure "requires analyzing the 'totality of the circumstances.'" *Barnes*, 605 U.S. at 80 (quoting *County of Los Angeles v. Mendez*, 581 U.S. 420, 427-28 (2017)).

A brief investigatory stop is authorized where the circumstances provide "[an] officer [with] reasonable, articulable suspicion that the person *has been*, is, or is about to be engaged in criminal activity." *United States v. Hensley*, 469 U.S. 221, 227 (1985) (quoting *United States v. Place*, 462 U.S. 696, 702 (1983) (emphasis added)); *see United States v. Montieth*, 662 F.3d 660, 665 (4th Cir. 2011); *Hubbard*, ___ Va. at ___ (citing *Hill*, 297 Va. at 813). Reasonable suspicion "requires only

- 6 -

'some minimal level of objective justification.'" *Hairston v. Commonwealth*, 67 Va. App. 552, 561 (2017) (quoting *Branham v. Commonwealth*, 283 Va. 273, 280 (2012)). "[T]he Fourth Amendment does not require a[n officer] who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape." *Raab v. Commonwealth*, 50 Va. App. 577, 582 (2007) (en banc) (quoting *United States v. Montoya de Hernandez*, 473 U.S. 531, 544 (1985)). Instead, "[t]he calculus of reasonableness . . . allow[s] for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving." *Hubbard*, ___ Va. at ___ (quoting *Ryburn v. Huff*, 565 U.S. 469, 477 (2012) (per curiam)).

From a lawful stop or seizure flow the parameters of what law enforcement is permitted to do while investigating. If the officer reasonably suspects that a stopped individual may be armed and dangerous, "'a limited protective search' of the individual being detained is reasonable under the Fourth Amendment." *McArthur v. Commonwealth*, 72 Va. App. 352, 360 (2020) (quoting *Adams v. Williams*, 407 U.S. 143, 146 (1972)); *see Bagley v. Commonwealth*, 73 Va. App. 1, 16 (2021) (noting that "a reasonable articulable suspicion that [an individual] possesse[s] a concealed weapon . . . *ipso facto* render[s] him potentially armed and dangerous," permitting a pat down (quoting *Jones v. Commonwealth*, 52 Va. App. 548, 560-61 (2008))). The officer is "not required to 'be absolutely certain that the individual [is] armed[. T]he issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Hill*, 297 Va. at 817 (quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968)).

We have no doubt that the situation here presented such circumstances, on the heels of a possible armed robbery with suspects on the scene and the whereabouts of a gun unknown. Hollingsworth rightly does not dispute the reasonableness of the initial stop and frisk of him for weapons. He challenges only the second pat down as unjustified. He contends the police had no

new information and only a "hunch" that he had a firearm, based on the fact that he declined to be frisked a second time and the officers had not found a firearm anywhere else they looked. We disagree.

The particular facts here and the applicable law refute these arguments. The officers were privy to additional, very relevant facts, and the totality of the circumstances at the time of the second pat down provided reasonable suspicion to support the officers' actions.

Virginia law recognizes that "[s]uccessive investigatory *Terry* stops of a possible suspect are not *per se* unlawful." *Jackson v. Commonwealth*, 22 Va. App. 347, 354 (1996). If police find nothing illegal during an initial stop, "they are not required to ignore the facts that [first] triggered" the investigation. *Id.* at 355 (quoting *Jha v. Commonwealth*, 18 Va. App. 349, 354 (1994)). The test and standard are straightforward. A second investigatory stop or detention must be based on new information that, "in conjunction with" prior information, creates reasonable suspicion anew. *Id.* And "[e]ach instance of police conduct must be judged for reasonableness in light of the particular circumstances." *Iglesias v. Commonwealth*, 7 Va. App. 93, 100 (1988) (en banc) (citing *Terry*, 392 U.S. at 21).

Given that successive *Terry* stops or detentions are permissible when an officer learns new information, it logically follows that successive pat downs are permissible if the officer receives new information supporting a reasonable suspicion, under the totality of the circumstances, that the individual may be armed and dangerous. *See United States v. Green*, 946 F.3d 433, 439 (8th Cir. 2019) (upholding a suspect's second pat down where "the first patdown was quick and cursory" and the police had seized a weapon from his companion); *Balentine v. State*, 71 S.W.3d 763, 767 & n.5, 769-70 (Tex. Crim. App. 2002) (upholding a suspect's second pat down after the officer, who described the first pat down as incomplete, received "contradictory answers" during questioning); *see also United States v. Howard*, 729 F.3d 655, 662 (7th Cir. 2013) (holding that in many

instances, "a first frisk misses a hidden weapon, sometimes with [serious] consequences," and a second frisk may be reasonable based on "evolving" circumstances).

And the United States Supreme Court has made clear that the investigating officer need not observe for himself the suspicious behavior that prompts the stop or pat down. *See Alabama v. White*, 496 U.S. 325, 330-31 (1990). A tip received from another may contribute to the totality of the circumstances that provide reasonable suspicion, viewed at the time of the police conduct. *Id.*; *see Navarette v. California*, 572 U.S. 393, 397-98 (2014). Both the tipster's "veracity" and "basis of knowledge" are relevant considerations in determining how much weight may be given to it in the reasonable-suspicion analysis. *Illinois v. Gates*, 462 U.S. 213, 233 (1983). Applying this balancing test in the context of a "disinterested" citizen-tipster, one who is either an eyewitness or a victim, permits police to "give more weight to the . . . information than they would to information from a 'criminal' informer, whose motives are less likely to be pure." *Reed v. Commonwealth*, 36 Va. App. 260, 267-68 (2001). In fact, information received from such a person may, by itself, furnish "sufficient indicia of reliability to provide an officer with reasonable suspicion to make an investigatory stop" and perform a weapons pat down. *See id.* at 267.[6]

When Brooks first frisked Hollingsworth for weapons, the officer had not spoken with the store clerks, who were at the very least third-party eyewitnesses to the brandishing offense.[7] At the time of the initial contact and pat down, therefore, Brooks had limited information. At the onset, he learned from the police dispatcher that a "dispute with a potential robbery" had occurred at the store. Understandably, this information caused the officers who arrived at the

---

[6] This principle is based on the theory that law enforcement can gauge the citizen-informant's "reputation" and he "can be held responsible if [his] allegations turn out to be fabricated." *Reed*, 36 Va. App. at 267 (alteration in original) (quoting *Florida v. J.L.*, 529 U.S. 266, 270 (2000)).

[7] As Brooks searched the SUV after initially frisking Hollingsworth, he stated to another officer, "[W]e need to talk to the complainant [about] what he saw."

scene to be concerned about weapons. Brooks had general descriptions of two suspects and their silver SUV, but that was all he knew. Hollingsworth and his companion were the only two people there, and they matched the descriptions given. So Brooks and another officer patted the two men down for weapons. Brooks acknowledged that the initial frisk of Hollingsworth, the one he conducted, was not thorough. Officers Chase and Luu arrived after Brooks had frisked Hollingsworth. Before receiving any new information from the store clerks, Chase honored Hollingsworth's refusal to be frisked a second time. But after the store clerks specifically identified Hollingsworth as the individual who brandished the firearm in the store and described the weapon as one with an extended magazine, Chase insisted on patting down Hollingsworth a second time. This second frisk prompted by the added information yielded the firearm almost immediately.

As the circuit court found, it was reasonable for the officers to believe that Hollingsworth had a firearm and Brooks's cursory initial pat down simply failed to locate it.[8] *See Green*, 946 F.3d at 439; *Balentine*, 71 S.W.3d at 767 & n.5, 769-70. The store clerks confirmed that Hollingsworth actually did brandish a gun, and they described it. In conjunction with the fact that the firearm was still missing, Chase reasonably suspected that Hollingsworth, who was identified as the brandisher, remained armed and presently dangerous at the scene. *See McArthur*, 72 Va. App. at 360; *see also Jackson*, 22 Va. App. at 355-56 (upholding the warrantless search of a car for a weapon during a second stop of the defendant); *cf. United States v. Kehoe*, 893 F.3d 232, 239 (4th Cir. 2018) (upholding a pat down for carrying an illegally concealed weapon while drinking where the eyewitness tipster sufficiently identified both himself and the suspect). To quickly confirm or dispel that suspicion, it was entirely reasonable for Officer Chase to pat

---

[8] Officer Brooks explained that he focused the first pat down on Hollingsworth's pockets because that is where most people keep their guns.

Hollingsworth down despite the fact that Brooks had done so before the additional information was revealed. *See Hill*, 297 Va. at 813-15, 822; *Jackson*, 22 Va. App. at 355-56; *see also Phillips v. Commonwealth*, 17 Va. App. 27, 30 (1993) (discussing the scope of a lawful weapons pat down). The Fourth Amendment simply did not require Chase to risk either being shot while continuing to investigate the attempted robbery or allowing Hollingsworth to orchestrate an armed escape. *See Jackson*, 22 Va. App. at 354; *see also Jones*, 52 Va. App. at 567 ("The law does not expect [that] a police officer must gamble on turning away from a possible danger and chance taking a bullet in the back . . . ." (second alteration in original) (quoting *Lansdown v. Commonwealth*, 226 Va. 204, 212 (1983))).[9]

CONCLUSION

We hold that the circuit court did not err by denying Hollingsworth's motion to suppress the firearm found in his waistband during a second pat-down search. Consequently, the conviction entered on his conditional guilty plea is affirmed.

*Affirmed.*

---

[9] Given this ruling, the Court does not address the circuit court's alternative holding based on inevitable discovery relating to Hollingsworth's arrest on a warrant for driving under the influence. *See Salahuddin v. Commonwealth*, 67 Va. App. 190, 210 n.5 (2017) (ruling that best-and-narrowest-ground principles obviated the need to address inevitable discovery after concluding that the search was reasonable based on consent and a search warrant); *see also Commonwealth v. Kartozia*, 304 Va. 321, 336 & n.* (2025) (applying best-and-narrowest-ground principles to avoid addressing a harmless error claim after concluding that the circuit court's ruling on the merits was not error). For the same reason, we do not consider whether the second pat down was reasonable based on the existence of probable cause to arrest Hollingsworth for brandishing a firearm.